## ROYALL *v.* VIRGINIA.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

Argued January 7, 8, 1886.—Decided February 1, 1886.

An assessment made by a statute of Virginia a condition precedent to obtaining a license for pursuing a business or profession within the State, is a tax, debt, or demand within the meaning of the act of that State of March 30,

1871, making coupons on the bonds of the State receivable for "taxes, debts, dues and demands due the State."

The "separate revenue license," which persons authorized and licensed to practise as attorneys at law in the courts of Virginia are required by the statutes of that State to obtain before practising, is a tax laid for revenue, and not an exaction for purposes of regulation.

When a statute of a State imposes license taxes for purposes of revenue upon persons pursuing lawful occupations and professions within the State, and a State officer charged with the duty of issuing licenses thereunder, acting in obedience to a statute of the State which is in conflict with the Constitution of the United States, refuses to issue such a license to a person who has duly tendered the amount required by law to be paid for it, the person tendering the payment, if otherwise qualified to pursue the occupation, is not required to proceed by mandamus to compel the issue of the license, and to await the result of those proceedings before entering upon the pursuit or occupation.

After lawful tender to the proper State officer of the requisite amount of coupons (receivable by the terms of the act of the State of Virginia of March 30, 1871, in payment of taxes, debts, dues, and demands due the State) for a "separate revenue license," by a person otherwise duly authorized and licensed to practise as an attorney at law, and after refusal by that officer to receive the same or to issue the "separate revenue license," the person so making the tender may at once enter upon the practice of his profession; and any law of the State subjecting him to criminal proceedings therefor is in conflict with the Constitution of the United States.

The plaintiff in error was convicted, in the Hustings Court of the City of Richmond, of the misdemeanor under the laws of Virginia of practising law as a lawyer without having first obtained a license so to do from the commissioner of the revenue.

To the information the plaintiff in error filed the following plea:

"And for a plea in this behalf the said William L. Royall comes and says that he is an attorney-at-law, duly licensed and qualified to practise law in the courts of the State of Virginia, under the laws of said State, and that he has been such for more than five years; that on the 1st day of May, 1884, he paid to Samuel C. Greenhow, who is the treasurer of the city of Richmond, Virginia, twenty-five dollars and seventy-five cents, and received from him and the commissioner of the revenue a revenue license as a lawyer for one year from that date; that he has not practised his profession as a lawyer in

the courts of said State between the 1st day of May, 1885, and the 11th day of July, 1885; that on the 11th day of July, 1885, he tendered to Seaton G. Tinsley, who is the deputy for Samuel C. Greenhow, one coupon for fifteen dollars and ten dollars in United States Treasury notes, in payment of his license tax as an attorney-at-law for the ensuing year, and seventy-five cents in silver coin for the fee of the commissioner of the revenue; that said coupon was cut from a bond issued by the State of Virginia under the provisions of an act of the General Assembly, approved March 30, 1871, entitled 'An act to provide for the funding and payment of the public debt;' that it was overdue and past maturity, and bore upon its face the contract of the State of Virginia that it should be received in payment of all taxes, debts, demands, and dues due to the said State; that when he made said tender he demanded of said Greenhow a certificate in writing stating that he had deposited with him said coupon and money, but the said Greenhow, by his said deputy, refused to receive said coupon and money for any purpose whatever, and refused to give him said certificate or any other certificate; that he refused to receive said coupon and money, because an act of the General Assembly of the State of Virginia, approved February 7th, 1884, forbade him to receive said license tax in coupons, and because the 112th section of an act of the General Assembly of said State, approved March 15th, 1884, provides that all license taxes shall be paid in current money of the United States, and not in coupons; that thereupon the defendant made the affidavit hereto attached, marked 'A,' and presented it to R. B. Munford, who is the commissioner of the revenue for the city of Richmond, and demanded of him a revenue license as an attorney-at-law, and at the same time he presented to the said Munford the paper hereto attached, marked 'B,' and at the same time he offered to pay the said Munford any and all fees that he was entitled to receive before issuing said license, but the said Munford refused to issue to defendant a license as an attorney-at-law; that thereafter defendant accepted the employment of a client who was being prosecuted for a misdemeanor in this honorable court, and assisted in his defence, and thus practised his profession as a

lawyer without a revenue license, but said professional act was done after defendant had made the efforts hereinbefore described to obtain a revenue license, and this he is ready to verify."

The affidavit referred to in the plea set forth the facts of the tender, and the paper marked "B" was the usual form of an application for a revenue license.

To this plea the Commonwealth filed a general demurrer, which was sustained by the court, on the ground that the defendant had no right to practise his profession as an attorney-at-law after the tender of the coupons and money, as described in the plea, without first having obtained a license therefor. The defendant then pleaded not guilty, and a trial was had, resulting in a verdict finding the defendant guilty and assessing his fine at $30.

During the progress of the trial a bill of exceptions was duly taken, as follows:

" Be it remembered that on the trial of this cause the same was submitted to the jury upon the following agreed statement of facts, to wit:

" ' It is admitted as evidence in the case of the *Commonwealth* v. *Royall* that said Royall did not practise his profession as attorney-at-law between May 1, 1885, and July 11, 1885, and that on the latter day he tendered to the treasurer of the city of Richmond a coupon issued by the State of Virginia under the provisions of the act of March 30, 1871, for the sum of $15.00 and $10.75, lawful money of the United States, in payment of his license tax for the ensuing year, and demanded his license of the proper officer ; that said coupon was receivable in payment of all taxes, debts, and demands due said State ; that said tender was refused; that thereupon the defendant practised his profession as an attorney after said tender, but not before, without revenue license, but the said defendant has for more than five years been duly licensed to practise law under the laws of Virginia. It is further agreed that the license tax on the defendant as an attorney-at-law is twenty-five dollars ($25).'

" Thereupon the defendant moved the court to instruct the jury as follows:

" 'If the jury believe from the evidence that the defendant did not practise his profession of attorney-at-law between the 1st day of May, 1885, and the 11th day of July, 1885, and that on the 11th day of July, 1885, he tendered to the treasurer of the city of Richmond a coupon for $15.00, issued by the State of Virginia under the provisions of the act of assembly approved March 30, 1871, which coupon, by provisions of said act, was receivable for all taxes, debts, and demands due said State, and ten dollars and seventy-five cents, in lawful money of the United States, in payment of his license tax, which said tax is $25, and 75 cents commissioner's fee, for the then ensuing year, and that said tender was refused by said treasurer, then they are instructed they must find the defendant not guilty.'

"Which instructions the court refused to give. To the court's action in refusing which instructions the defendant excepts, and tenders this his first bill of exceptions, and prays that this his bill of exceptions be signed, sealed, and made a part of the record; which is accordingly done."

Judgment was entered on the verdict for the payment of the fine, and execution awarded. The record contained the following:

" And, at the instance of the defendant, the court certifies that in the record and at the trial of this cause there was drawn in question the validity of section 86 of chapter 34 of the Code of Virginia of 1873, and an act of the General Assembly of said State, approved February 7, 1884, entitled 'An act to regulate the granting of licenses for the exercise of any privilege,' and the 112th section of an act of the General Assembly of said State, approved March 15, 1884, entitled 'An act to provide for the assessment of taxes on persons, property, and incomes,' &c., upon the ground that, so far as they undertake to inflict punishment upon the defendant for practising his profession as an attorney-at-law without a license, after having tendered the State's tax-receivable coupons in payment of his license tax, they are repugnant to section 10 of article I. of the Constitution of the United States.

" But the court being of opinion that the defendant had no right to practise the profession of an attorney-at-law without

a license after he had tendered payment of his license tax in coupons, decided and gave judgment that said section of said code and said acts of the General Assembly are not repugnant to section 10 of article I. of the Constitution of the United States in that behalf, and it decided and gave judgment in favor of the validity of said section of said code and said act of assembly."

The Supreme Court of Appeals denied a petition praying for an allowance of a writ of error, and to reverse that judgment this writ of error was prosecuted.

This case was argued with *Barry* v. *Edmunds, ante,* 550; *Chaffin* v. *Taylor, ante,* 567; and *Sands* v. *Edmunds, post,* 585.

*Mr. William L. Royall* and *Mr. Daniel H. Chamberlain* for plaintiff in error.

*Mr. R. A. Ayres* and *Mr. Walter R. Staples* for defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court. After stating the facts as reported above he continued:

The Virginia Code of 1873, Title 12, ch. xxxiv, § 60, provides that "no person shall, without a license authorized by law, practice as an attorney at law;" and § 61, that "every attorney at law, in addition to being licensed, sworn and admitted to prosecute or defend actions or other proceedings in the courts of this commonwealth, on the retainer of clients, shall obtain a revenue license, and no person shall act as attorney-at-law, or practise law in the courts of this commonwealth, without a separate revenue license."   This revenue license, it will be observed, is different from and in addition to the license to practise law, given only to such as on examination, as to their character and acquirements, are found to be duly qualified therefor.   The amount of this revenue license was fixed by an act of March 15, 1884, at $15 for those who had been licensed to practice for less than five years, and at $25 for all others. Section 86 of ch. 34 of the Virginia Code of 1873 provides that

"any person who shall engage in or exercise any business, employment or profession, without a license, if a license be required by law, or shall in any manner violate the license or revenue laws of the State, if no specific fine is imposed for such violation, shall pay a fine of not less than thirty dollars nor more than one thousand dollars."

The act of February 7, 1884, Acts of Virginia, 1883–'84, 120, enacts that no application for a license to do any business, or to follow any profession, trade or calling in that State, shall be made, and if made shall not be considered, except upon compliance with its provisions, which, among other things, require that the amount of the assessment prescribed by law as a condition precedent shall accompany the application, in gold or silver coin, United States Treasury notes or national bank notes.

Section 112 of the act of March 15, 1884, Acts of Virginia, 1883–'84, 603, also provides that "applications for licenses shall be made, and all taxes assessed by chapter one of this act shall be paid in lawful money of the United States, in the mode and subject to the provisions of an act to regulate the granting of licenses, approved the seventh day of February, eighteen hundred and eighty-four," &c.

By the terms of the act of March 30, 1871, the coupons tendered in this case were made receivable for "all taxes, debts, dues, and demands due the State," and this stipulation, as has been repeatedly decided by the Court of Appeals of Virginia and by this court, constituted a contract between the coupon-holder and the State of Virginia, the obligation of which the State is forbidden to impair by the Constitution of the United States, and any law of the State which would have that effect if enforced, is thereby annulled and made void. To this point are the cases of *Antoni* v. *Wright*, 22 Grattan, 833; *Wise* v. *Rogers*, 24 Grattan, 169, and *Clarke* v. *Tyler*, 30 Grattan, 134, in the Court of Appeals of Virginia; and in this court the cases of *Hartman* v. *Greenhow*, 102 U. S. 672; *Antoni* v. *Greenhow*, 107 U. S. 769, and *Poindexter* v. *Greenhow*, 114 U. S. 270. In *Hartman* v. *Greenhow*, *ubi supra*, it was shown that the consideration for this stipulation was a surrender by

its creditors of one-third of their claim against the State.    In *Antoni* v. *Greenhow*, 107 U. S. 769, 775, it was said : " The right of the coupon-holder is to have his coupon received for taxes when offered; " and, " Any act of the State which forbids the receipt of these coupons for taxes is a violation of the contract and void as against coupon-holders." p. 771.    In *Poindexter* v. *Greenhow*, 114 U. S. 270, 281, no point in which was reopened in the argument of this cause, it was said : " It is well settled by many decisions of this court that for the purpose of affecting proceedings to enforce the payment of taxes, a lawful tender of payment is equivalent to actual payment, either being sufficient to deprive the collecting officer of all authority for further action and making every subsequent step illegal and void ; " a proposition founded on the authority of *Woodruff* v. *Trapnall*, 10 How. 190 ; *United States* v. *Lee*, 106 U. S. 196 ; *Bennett* v. *Hunter*, 9 Wall. 326 ; *Tacey* v. *Irwin*, 18 Wall. 549 ; *Atwood* v. *Weems*, 99 U. S. 183 ; and *Hills* v. *Exchange Bank*, 105 U. S. 319.

That charges, or, as they are called in the statutes, assessments made by law as conditions precedent to obtaining licenses for pursuing a business or profession, are included within the meaning of the words, " taxes, debts, dues, and demands due the State," as used in the act of March 30, 1871, does not seem to admit of reasonable doubt.    In *Clarke* v. *Tyler*, 30 Grattan, 134, it was adjudged by the Court of Appeals of Virginia that a fine imposed for a violation of law could be discharged under this provision in coupons in lieu of money.    So that upon the authority of that case the very fine imposed by the Hustings Court of Richmond upon the plaintiff in error for practising law without a revenue license may lawfully be paid and discharged in the very coupons which were tendered in payment of the license itself and refused.    Surely such an anomaly cannot be justified or admitted.    The payment required as a preliminary to the license is in the nature and form of a tax, and is a due to the State which it may demand and exact from every one of its citizens who either will or must follow some business avocation within its limits, to the pursuit of which the assessment is made a condition precedent.    It is an occupation

tax, for which the license is merely a receipt and not an authority, except in that sense, because it is laid and collected as revenue, and not merely as incident to the general police power of the State, which, under certain circumstances and conditions, regulates certain employments with a view to the public health, comfort, and convenience. In the latter class of cases the exactions may be either fees or fines, as they are proportioned to the expense of regulation, or laid as a burden upon and a discouragement to the business, and not taxes which are levied for the purpose of raising public revenue by means of a contribution either from the person or the property or the occupation of all citizens in like circumstances. It was, therefore, in the character of a tax that the payments were required and made for licenses issued under the internal revenue acts of the United States. *McGuire* v. *The Commonwealth*, 3 Wall. 387. Speaking of them in the *License Tax Cases*, 5 Wall. 462, 471, Chief-Justice Chase said: "The granting of a license, therefore, must be regarded as nothing more than a mere form of imposing a tax," &c., and that "this construction is warranted by the practice of the government from its organization. . . . They were regarded merely as a convenient mode of imposing taxes on several descriptions of business, and of ascertaining the parties from whom such taxes were to be collected. . . . But, as we have already said, these licenses give no authority. They are mere receipts for taxes." The license under the laws of Virginia, required from the plaintiff in error, cannot be distinguished from those of the class just referred to, issued under the internal revenue laws of the United States.

We are referred to the case of *Sights* v. *Yarnalls*, 12 Grat. 292, as defining a license under the laws of Virginia in a different sense. We think, on the contrary, that it is not only consistent with the view we have taken, but strongly in corroboration of it. In that case, the amount assessed as a condition of the license is expressly designated to be a tax. It was an exaction made by the municipal government of the city of Wheeling, under a law which expressly authorized it, in reference to houses of entertainment, to grant or refuse licenses, and the case was one of that class. The language of the city char-

ter was: "They shall further have authority to regulate the manner in which such houses or places shall be kept, and to levy and collect taxes thereon, in addition to any tax which is or shall be payable on the same to the State."

The law of Virginia, however, on this point was definitely settled in accordance with the view we have here taken, in the case of *Ould* v. *City of Richmond*, 23 Grat. 464, followed by *Humphreys* v. *City of Norfolk*, 25 Grat. 97, and *The Western Union Telegraph Co.* v. *City of Richmond*, 26 Grat. 1.

In the case of *Humphreys* v. *The City of Norfolk, ubi supra,* the Supreme Court of Appeals of Virginia, referring to the previous case of *Ould* v. *City of Richmond*, said: "The objection was made in that case that a power to license involves in its exercise the power to prohibit without such license; and that such power vested in a municipal corporation is incompatible with the rights of attorneys conferred by their general license to practice in any and every part of the State. This objection did not prevail. Judge Anderson, upon this point, speaking for the entire court, conceded that the city authorities could not prohibit attorneys at law, already licensed, from practicing their profession within the city limits. The exercise of the vocation was, however, a civil right and privilege, to which are attached valuable immunities and pecuniary advantages, and is a fair subject of taxation by the State and by municipal corporations. The power to impose a license tax upon the profession is included in the general power of taxation given by the sixty-ninth section of the charter, and is not taken away by subsequent limitations." "The principles settled by that case," continued the court, "are decisive of this. In neither case is the attempt made to prohibit the exercise of the business or vocation. The license required by the corporation is merely a mode of assessing the tax; if it be reasonable and just, it matters but little by what name it is called. The power to impose fines and penalties for a failure to pay the tax required is not only an incident to the power of taxation, but is expressly conferred by statute."

That the party complying with the statutory conditions is entitled as of right to the license, is conclusive that the pay-

ment is a tax laid for revenue and not an exaction for purposes of regulation. *Mayor &c.* v. *Second Avenue Railroad Co.*, 32 N. Y. 261; *State* v. *Hoboken*, 33 N. J. L. (4 Vroom), 280; 2 Dillon Municipal Corporations, 766, ch. XIX., § 768. The occupation, which is the subject of the license, is lawful in itself, and is only prohibited for the purpose of the license; that is to say, prohibited in order to compel the taking out a license, and the license is required only as a convenient method of assessing and collecting the tax. Cooley on Taxation, 407. Such a license fee was held to be a tax by this court in the cases of *Brown* v. *Maryland*, 12 Wheat. 419; *Ward* v. *Maryland*, 12 Wall. 418, and *Welton* v. *Missouri*, 91 U. S. 275. We think it entirely clear, both from the nature of the case and upon authority, that the payments demandable by the State for the license applied for by the plaintiff in error are taxes within the meaning of the act of March 30, 1871, in discharge of which coupons were receivable by its terms, and that the plaintiff in error must be regarded, after making the tender alleged, in the same situation in law as if he had tendered gold or silver coin or other lawful money of the United States.

Admitting this, it is still contended, on behalf of the Commonwealth, that it was unlawful for the plaintiff in error to practice his profession without a license, and that his remedy was against the officers to compel them to issue it. It is doubtless true, as a general rule, that where the officer, whose duty it is to issue a license, refuses to do so, and that duty is merely ministerial, and the applicant has complied with all the conditions that entitle him to it, the remedy by *mandamus* would be appropriate to compel the officer to issue it. That rule would apply to cases where the refusal of the officer was wilful and contrary to the statute under which he was commissioned to act. But here the case is different. The action of the officer is based on the authority of an act of the General Assembly of the State, which, although it may be null and void, because unconstitutional, as against the applicant, gives the color of official character to the conduct of the officer in his refusal; and, although at the election of the aggrieved party the officer might be subjected to the compulsory process

of *mandamus* to compel the performance of an official duty, nevertheless the applicant, who has done everything on his part required by the law, cannot be regarded as violating the law if, without the formality of a license wrongfully withheld from him, he pursues the business of his calling, which is not unlawful in itself, and which, under the circumstances, he has a constitutional right to prosecute. As to the plaintiff in error, the act of the General Assembly of the State of Virginia forbidding payment of his license tax in its coupons, receivable for that tax by a contract protected by the Constitution of the United States, is unconstitutional, and its unconstitutionality infects and nullifies the antecedent legislation of the State, of which it becomes a part, when applied, as in this case, to enforce an unconstitutional enactment against a party, not only without fault, but seeking merely to exercise a right secured to him by the Constitution. It is no answer to the objection of unconstitutionality, as was said in *Poindexter* v. *Greenhow, ubi supra,* "that the statute, whose application in the particular case is sought to be restrained, is not void on its face, but is complained of only because its operation in the particular instance works a violation of a constitutional right; for the cases are numerous where the tax laws of a State, which in their general and proper application are perfectly valid, have been held to become void in particular cases, either as unconstitutional regulations of commerce, or as violations of contracts prohibited by the Constitution, or because in some other way they operate to deprive the party complaining of a right secured to him by the Constitution of the United States."

In the present case the plaintiff in error has been prevented from obtaining a license to practice his profession in violation of his rights under the Constitution of the United States. To punish him for practicing it without a license thus withheld is equally a denial of his rights under the Constitution of the United States, and the law, under the authority of which this is attempted, must on that account and in his case be regarded as null and void.

As the sum demanded for the license is a tax, the provision for the punishment of one who persues his profession without a

license is a part of the revenue system of the State, and is a means merely of enforcing payment of the tax itself, or of a penalty for not paying it. It is legally equivalent to a civil action of debt upon the statute, and its substantial character is not changed by calling the default a misdemeanor, and providing for its prosecution by information. The present case, therefore, stands precisely, so far as the constitutional questions arising in it are affected, as if it were a civil action, in which the Commonwealth of Virginia was plaintiff, seeking to recover the amount due on account of the tax and penalty. In that aspect no one would doubt that it would be a perfect defence that the defendant had previously paid the demand, or, what we have held to be legally equivalent, had tendered the amount in the coupons of the State, receivable in payment by an irrepealable contract, but which the appointed authorities of the State had wrongfully refused to receive. Such, as we conceive it, is the present case. The State of Virginia has sued the defendant for the recovery of a tax which he offered to pay, when it became due, in its own coupons, which by the law of its contract were receivable in satisfaction of the demand. Certainly the State cannot be permitted to recover against its own contract from the other contracting party, as to whom the only default alleged is that he has performed the contract on his part.

*The judgments of the Supreme Court of Appeals of Virginia, and of the Hustings Court of the City of Richmond, Virginia, are accordingly reversed, and the cause is remanded to said Hustings Court, with instructions to take further proceedings therein in accordance with law and in conformity with this opinion.*