## Richmond.

## COMMONWEALTH V. JONES.

JANUARY 20th, 1887.

Absent, LEWIS, P.

1. VIRGINIA COUPONS—*License taxes—Tender of coupons—Business without license.*—Act of March 4, 1886, prescribing how licenses may be obtained, and that if coupons be tendered therefor, the officer shall receive same for verification under act of January 14, 1882, and that unless said taxes be paid in money no license shall issue, nor applicant do business, until the coupons be so verified, is not repugnant to U. S. Constitution, Art. 1, sec. 10.
2. CASE AT BAR distinguished from *Royall* v. *Virginia*, 116 U. S. 572.

This is a writ of error to a judgment of the hustings court of the city of Richmond, rendered April 7, 1886, upon an indictment against Edgar G. Jones for unlawfully selling goods, wares, and merchandise by sample, card, description or other representation, without a license so to do. To this indictment Jones filed a special plea setting out substantially that, being desirous of doing business in Virginia as a sample merchant, he, on the 13th of March, 1886, tendered to the treasurer of said city tax-receivable coupons, cut from the bonds of the State, in payment of his license tax, and demanded of the treasurer a certificate to the effect that he had deposited said coupons with him for the purpose of procuring such license. The treasurer refused to receive said coupons, and also to give the certificate demanded. Thereupon Jones made an affidavit

to the above effect, and presented it to the commissioner of the revenue for said city, and demanded of him the required license; which the commissioner refused to grant. To this plea the Commonwealth filed a replication, setting up the provisions of the act of the General Assembly of March 4, 1886, and the offer of the treasurer under the provisions of that act to receive said coupons for identification and verification, and to give the certificate upon the payment of the license tax in money, or if the defendant did not desire to pay the license tax in money, to receive the coupons for verification and identification, and upon the certificate of the proper court that the said coupons had been verified in accordance with the act of the 14th of January, 1882, then, and not till then, to issue to said defendant the said certificate in accordance with the act last aforesaid and the act of March 4, 1886, which, the Commonwealth averred, afforded the defendant a proper and constitutional remedy.

The defendant demurred to this replication, and the court sustained the demurrer and ordered the discharge of the defendant. And thereupon the Commonwealth obtained a writ of error.

*R. A. Ayers,* Attorney-General, and *W. R. Meredith,* for the Commonwealth.

*George Bryan,* for defendant in error.

RICHARDSON, J. (after stating the case), delivered the opinion of the court.

The only question for determination here is the constitutionality of the act of March 4, 1886. Is it inconsistent with section 10, Article I, of the Constitution of the United States, which forbids "a State to pass any law impairing the obligation of contracts?"

The act in question provides that every person desiring a license to do business shall apply in writing to the commissioner of revenue, with a certificate from the treasurer, that he has deposited in coin, legal tender notes, or national bank-bills, the amount of the assessment prescribed as a condition precedent to issuing such license: provided, that if the applicant tenders papers purporting to be coupons detached from the State bonds issued under the act of March 30, 1871, or act of March 28, 1879, to pay the assessment, then the treasurer shall receive such coupons for identification and verification under act of January 14, 1882, entitled "An act to prevent frauds upon the Commonwealth and her security holders," &c.; but that no license shall be issued, and that the applicant shall have no right to do such business, unless and until the coupons are verified under the act of January 14, 1882. It further provides, that no application shall be made, or, if made, shall be considered, except under this act; and that no license shall be granted unless all the requirements thereof are complied with, and prescribes the penalties for its violation.

It is contended for the defendant in error that this act of March 4, 1886, is equally repugnant to the said section of the Federal Constitution as the acts of February 7, 1884, and March 15, 1884, which were pronounced by the Supreme Court of the United States in *Royall* v. *Virginia*, 116 U. S. 572, void for repugnancy to said section. But we think the contention is wholly untenable and not supported by the decisions of the Supreme Court referred to.

The statutes pronounced unconstitutional in Royall's case compelled the treasurer to refuse under any circumstances to receive State coupons in payment of license taxes, and required the same to be paid in money, and nothing else; and in that case the court said: "If a State officer, acting in obedience to a statute of the State, *which is in conflict with* the Constitution of

the United States, refuses to issue a license to a person who has *duly tendered the* amount, the person tendering need not take legal steps to compel the issuance of the license before doing business," and "if the law is unconstitutional, its unconstitutionality infects and nullifies the antecedent legislation of the State." That is, as applicable to the case in hand, such unconstitutionality of the act of March 4, 1886, would nullify the antecedent legislation which does not allow any person to act as a sample merchant without first having obtained a license therefor; although, in the absence of such unconstitutionality, such a requirement is admitted to be within the power of the State.

But let us analyze and critically consider what the Supreme Court of the United States meant by the language: "If a State officer refuses to issue a license to a person who has tendered *the amount required by the law."* By its terms, this sentence means, necessarily, either that the amount so tendered was *tendered in money,* or else, in the light of the context, was tendered in money, or in *genuine* tax-receivable coupons, and the amount so tendered was refused and the license denied by an officer acting in obedience to an unconstitutional statute, then the person *so* tendering the amount *so* refused, need not take legal steps to compel the issuance of the license, before doing business. But not so, if any of these elements are .wanting. That is, if the officer, not acting in obedience to a *State statute,* shall *wilfully* refuse to receive the amount so tendered and to issue such license; or if the amount be not tendered in money or in *genuine* tax-receivable coupons, but only in papers purporting to be such coupons, as to the genuineness of which the officer entertains reasonable doubts, impressed upon him by the plain terms employed by the legislature in the preamble and in the body of the acts referred to; and the officer makes such refusal in obedience to a *constitutional* statute of the State, then

in such case the Supreme Court of the United States did not say, or intend to say, in Royal's case, that the person tendering need not take legal steps to compel the issuance of license *before doing business.* The language of the court is not fairly susceptible of any such construction as is contended for. The highest judicial tribunal in the land could never, by the language employed, have intended to make a roving peddler of goods by sample the arbiter of the constitution and laws of this State.

It is true the court in that case did, in effect, say that one who tenders coupons in payment of such taxes may, if they are refused, prosecute his business without a license, and cannot be punished for so doing. But it would be altogether unjustifiable to impute to that court an intention to say, that one who tenders coupons, though they be coupons that are spurious, or, at least, of doubtful genuineness, if they are refused to be taken as payment until they shall have been verified in accordance with the law of the State, need not take legal steps to compel the issuance of such license before doing business. The alteration of the conditions upon which the remark of the court in that case, was based, makes all the difference in the world, and a difference upon which as the pivotal point, the decision of the question arising here must turn. The question of spurious bonds and coupons is one of too grave import to this Commonwealth, to be lightly brushed aside, and should not be treated with judicial incredulity. No fact—certainly none connected with the history of the Virginia State debt—is better established than that there are spurious bonds of the State out, some of which have been presented and claimed as valid, and their invalidity incontestably established. It is idle to attempt to "whistle down the wind" the existence of such spurious bonds, and the absolute necessity of protec-

tion against them. Nor is it in keeping with the dignity of the judicial station, or with common fairness, to attribute to the State other and less honorable motives than those declared by her legislature.

In the preamble to the act of January 14, 1882, the fact of the existence of such spurious bonds is set forth, and also the fact of the passage of the act as a necessary means of protection to both the State and her creditors. Then, aside from all other evidences of the same facts, the legislature of the State, having thus found the facts, this court will hold the ascertainment one not to be questioned.

In view of these facts, and in view of the great importance of the subject to the State, we repeat that the Supreme Court of the United States did not say, and could not have intended to say, in *Royall* v. *Virginia,* that which, as applicable to the case under consideration, would be tantamount to saying that a person desiring to conduct the business of a sample merchant in this State may, upon the bare tender of · papers purporting to be tax-receivable coupons, cut from bonds of this State, without more, and though the papers thus tendered may be spurious, or the officer to whom they are tendered may honestly doubt their genuineness, take the law in his own hands and proceed to do business without first taking the legal steps necessary to compel the issuance of the license required by law.

It is important to remember in this connection that while the bonds of the State are signed by the State treasurer, the signature to the coupons attached is engraved, and may readily be counterfeited to an unlimited extent. This view of the subject is forcibly put by Lacy, J., in *Cornwall* v. *Commonwealth, ante,* p. 644.

If, then, the treasurer in this case acted in obedience to a State statute which is *not* unconstitutional, it follows that the applicant, whose tender was refused, *cannot* proceed to do busi-

ness without first obtaining a license. And the same conclusion results if the applicant makes his tender only in papers of doubtful genuineness and the treasurer only refuses to accept them as payment, until their genuineness shall have been verified according to law. The Supreme court of the United States has never said, nor can it be supposed that it will ever say, that the treasurer shall be required to accept in payment of license taxes, or of any taxes, either spurious coupons, or coupons of *doubtful* genuineness.

From the standpoint of the Supreme Court of the United States in Royall's case, the demonstration of the unconstitutionality of the statutes there passed upon, was an easy matter. Those statutes compelled the State officer to refuse coupons in payment of license taxes under any circumstances, and to receive nothing but money. That court had repeatedly held that such license assessments were taxes for revenue. *Brown* v. *Maryland*, 12 Wheat. 419; *Ward* v. *Maryland*, 12 Wall. 418; *Welton* v. *Missouri*, 91 U. S. 275. Both that court and this court had held that by the terms of the act of March 30, 1871, the coupons of Virginia were made receivable for all taxes, debts, dues, and demands due the State, and that by the surrender of their old bonds and the acceptance of two-thirds of their amount in new bonds, with coupons annexed, whereon was expressed such tax-receivability, constituted between the creditors and the State, a contract that was irrepealable without the consent of both parties. *Antoni* v. *Wright*, 22 Gratt. 833; *Hartman* v. *Greenhow*, 102 U. S. 672.

In the case last named, the federal court held that "the right of the coupon holder is to have his coupon received for taxes, when offered," and that, "any act of the State which forbids the receipt of these coupons for taxes," is a violation of the contract, and void as against the coupon-holder."

The conclusion, then, was irresistible that an act which compelled the treasurer, under all circumstances, to refuse to receive coupons when offered in payment of taxes, whether direct, or in the form of license assessments, impairs the obligation of the coupon contract, and is unconstitutional and void. But the act of March 4th, 1886, here under consideration, is wholly different. It does not *forbid* the treasurer to receive the coupons of the State, but only makes it his duty to withhold the certificate required as preliminary to the license, until the papers purporting to be tax-receivable coupons of the State, shall be verified and identified according to the act of January 14th, 1882. It does not violate the obligation of the coupon contract. On the contrary, on its very face, it preserves that obligation, which is to receive coupons (*genuine coupons*) in payment of all taxes; and, for its object, the act refers to the preamble of the act of January 14th, 1882. In fact, the act is only the extension of the letter of the said act of 14th January, 1882, to license assessments, to which, in spirit, it was already applicable. The statement in the preamble of that act must be considered as true. *Antoni* v. *Greenhow*, 107 U. S. 775. That act contained precisely the same features, to wit: the payment of the taxes in money in advance, and the filing of the coupons for verification, and the sending of those coupons to the local court to have the fact of their genuineness and receivability determined, subject to an appeal to the circuit court and to this court. These features were closely scrutinized and discussed and passed on by the Supreme Court of the United States in *Antoni* v. *Greenhow, supra,* where the learned chief justice declares that those features did not invalidate the said act. It is true that it has been said that that decision was only to the effect that the substitution of the remedy prescribed by the act of January 14th, 1882, for the remedy by *mandamus,* was not unconstitutional. The chief

justice did say: "The question we are now to consider is not whether, *if the coupon tendered is in fact genuine, and such as ought, under the contract, to be received,* and the tender is kept good, the treasurer cannot proceed to collect the tax by distraint, or such other process as the law allows, without making himself personally responsible for any trespass he may commit; but whether the act of 1882 violates any implied obligation of the State in respect to the remedies that may be employed for the enforcement of its contract, if the collector refuses to take the coupons." He then proceeds to say: "It cannot be denied that, as a general rule, laws applicable to the case which are in force at the time and place of making a contract, enter into and form a part of the contract itself, and that this embraces alike those laws which affect its validity, construction, discharge and enforcement. *Walker* v. *Whitehead,* 16 Wall. 314. But it is equally well settled that changes in the forms of action and modes of proceeding, do not amount to an impairment of the obligation of a contract, if an adequate and efficacious remedy is left." He then closely investigates the terms of the fourth section of the act of January 14, 1882, considers carefully the objections presented to its material features, which have been mentioned, declares that those features do not invalidate that section, and decides that that section does not impair the obligation of any contract which the State has made with the holders of its interest coupons.

Now, all this plainly holds good as respects the act of March 4th, 1886, which is virtually the same in terms and object as the act then and there passed upon.

But the above quotation from the opinion of the chief justice has been made not merely to show that the material features of that act were discussed and declared unexceptionable, but also to call emphatic attention to two important points made there in reference to the statute then before the court. The first is,

that the chief justice qualified in express terms, the duty of the treasurer to receive coupons in payment of taxes, by the condition that those coupons which are tendered him shall be *genuine and receivable* for those taxes; and, second, that the act required the payment in advance in money, for the payment whereof the coupons are tendered, as a condition precedent to their cancellation and the filing of the coupons and sending of them to the local court to have the fact of their genuineness and receivability determined. This clearly evinces that in the mind of that court the duty imposed by the statute on the treasurer to withhold the performance of the act he was called on to perform, to wit: the cancellation of the taxes in the one case, and the issuance of the certificate for the license in the other, was the leading feature in the statute, and was held in the case then before that court not to be objectionable, and not to invalidate the statute.

If that be true of the act of January 14th, 1882, it is equally true of the act of March 4th, 1886. The condition, then, upon which the court in Royall's case, held, that "if a State officer acting in obedience to a statute of the State, *which is in conflict with* the Constitution of the United States, *refuses* to issue a license to a person who has duly tendered the amount required by law, the person tendering need not take legal steps to compel the issuance of the license before doing business," and "may prosecute his business without a license and cannot be punished for so doing," does not exist in the case here before the court, and that decision has no bearing on, and cannot govern it. The act of March 4th, 1886, does not forbid the treasurer to receive genuine coupons in payment of license-taxes. It only provides that he shall resort to a certain mode to determine their genuineness and receivability, which mode requires no unreasonable delay, and pending which the applicant can at once obtain his license by the payment in advance in money,

of the assessment required by law; which money, if the coupons are determined to be genuine and receivable, will be refunded to him out of the State treasury. It is stated in the preamble (and the statement must be taken as true) that there are in existence bonds which are spurious, stolen, or forged, which bonds bear coupons in the similitude of genuine coupons receivable for all taxes, debts and demands due the Commonwealth; and the coupons from such spurious, stolen or forged bonds are received in payment of taxes, debts and demands; and genuine coupons from genuine bonds, after having been received in payment of taxes, debts and demands, are fraudulently reissued, and received more than once in such payments. If these facts are true as, in the absence even of all other evidence, they would be presumed to be, it was the duty of the Legislature, in order to protect the rights of the State and of her creditors, to enact a law requiring her officers to cause papers purporting to be coupons cut from the bonds of the State, to be identified and verified as genuine and receivable before taking them in discharge of her revenue assessments. The humblest citizen is entitled to be assured of the genuineness of that which is tendered him in satisfaction of what is due him; and surely this privilege cannot be denied to the State, in whose just protection is involved the safety and well being of every citizen.

The law of Virginia requires the obtainment of a license before any person can sell within her limits goods, wares, and merchandise by sample, card, description or other representation. These are articles which the State has an undoubted right to tax, either directly or indirectly, by imposing a license assessment on the business of selling them. The mode for the obtainment of such license is plainly prescribed by her laws. The conditions upon which it is granted are reasonable and just, and demanded by the policy of the State. Any one selling

goods in this State by sample, &c., in defiance of her laws, without the required license, is guilty of a misdemeanor and punishable as provided in her statutes.

Therefore, the judgment of the hustings court sustaining the demurrer of the defendant to the replication of the Commonwealth to the defendant's plea to the indictment against him, is erroneous, and must be reversed; and the case must be remanded to the said hustings court to be there further proceeded with in conformity with the law and the views herein expressed.

JUDGMENT REVERSED.