SOUTHERN EXP. CO. v. MAYOR, ETC., OF ENSLEY et al.

(Circuit Court, N. D. Alabama, S. D. July 26, 1902.)

1. INJUNCTION—PLEADINGS—LICENSE FEE—INTERSTATE COMMERCE.

A bill by an express company engaged in interstate transportation for an injunction to restrain the enforcement of a city ordinance requiring the payment of a license fee as a condition of transacting business in such city need not show that complainant has complied with the laws of the state as a condition precedent to its right to do business in such state, or that it is engaged in interstate commerce exclusively.

2. SAME—EXPRESS COMPANIES.

An ordinance of a city requiring an express company doing a local and interstate business to pay a license fee, and declaring it unlawful for such company to transact any business in such city until such fee is paid, is unconstitutional, as an unlawful exaction on interstate commerce.

3. SAME—JURISDICTION.

Where, in an action by a foreign express company engaged in interstate commerce against a city to restrain the enforcement of an ordinance exacting a license fee, the bill states that the value of the company's right to do business in such city exceeds $2,000, the federal court has jurisdiction, though the amount of the license fee is less than such amount.

4. EQUITY—RESTRAINT OF CRIMINAL PROCEEDINGS—INVALID ORDINANCE.

The rule forbidding a court of equity to stay criminal proceedings does not apply to an action for injunction to restrain the enforcement of an invalid ordinance imposing an unlawful license fee, and prescribing a penalty for the nonpayment of such fee.

¶ 4. See Injunction, vol. 27, Cent. Dig. § 179; Licenses, vol. 32, Cent. Dig. § 69.

**5.** SAME—PAYMENT OF ILLEGAL FEE—RECOVERY.

Where a city in enforcing an invalid ordinance imposing a license fee on an express company engaged in interstate commerce has twice arrested and fined the company's agent, and threatens to arrest and fine or imprison him every day until the fee is paid, the fact that the company could pay the fee and recover it back is not ground for refusing to restrain the enforcement of the ordinance.

## In Equity.   On demurrers to bill.

On December 15, 1901, the board of mayor and councilmen of the city of Ensley passed an ordinance "to prescribe and fix licenses for businesses, occupations, professions and vocations in the city of Ensley, Alabama, for the year 1902." The first section ordained "that the following be and the same is hereby declared to be the schedule of licenses for the year 1902, for divers businesses, professions, occupations, and vocations carried on or engaged in in the city of Ensley, Alabama, and each and every person, firm, company or corporation engaging in any of the businesses, vocations, professions or occupations herein provided for shall pay and take out such license and in such sums as are herein provided," to wit, "express company, one hundred dollars." Section 8 of the same ordinance declares that it shall be unlawful for any person, firm, or corporation to engage in any of the "aforesaid businesses, occupations, professions, callings or vocations mentioned in this ordinance, or for which a license may be required, whether mentioned herein or not, in the city of Ensley, during the year 1902, without first having procured a license therefor; and any violation of this ordinance, upon conviction therefor, shall be punished by a fine of not less than one,. nor more than one hundred dollars for each offense, or by imprisonment at hard labor for the city for not exceeding six months, one or both, at the discretion of the mayor trying the same, and each day shall constitute a separate offense." On the 8th of February, 1902, the Southern Express Company, a corporation created under the laws of Georgia, and a citizen of that state, filed its bill against the city of Ensley under its corporate name and the mayor. It is alleged in the bill that the express company has been for many years and is now engaged in conducting an express business for the forwarding and transportation of merchandise, goods, and moneys between the several states, and its lines extend over more than 10 states of the United States, and is now, and has been for many years, doing business in the state of Alabama as a common carrier engaged in interstate commerce, and that it has an office at Ensley, and at such office is doing business as a common carrier between Ensley and the various states, and in connection, by traffic arrangements with other express lines, has been doing business all over the United States. The bill then sets up the ordinance, the terms of which have been already stated, and alleges, in substance, that it seeks to impose a license for the privilege and right to do its business as aforesaid in the city of Ensley; that Scott, the mayor, on the 3d of February, 1902, fined complainant's agent $25 for doing business without a license prior to the 3d of February, 1902, from which judgment appeal was taken to the criminal court of Jefferson county, where it is now pending, undisposed of. It is further shown that, at a meeting of the mayor and city council of Ensley, a resolution was adopted to the effect that the agent of the express company at Ensley shall be arrested every day on which he does business in Ensley for the express company unless the said license of $100 is paid, and pursuant to that resolution the mayor caused the express company's agent, one Walker, to be again arrested for carrying on business without a license, and the said mayor informed the express company that he would continue to arrest the express company's agent, and he would be arrested each day until said license fee should be paid. It is further alleged that it is impossible to ascertain the extent of the injury to which complainant will be subjected by these continued and continuous arrests of its said agent, and that complainant is without any sufficient or adequate remedy to protect itself in the pursuit of its business aforesaid. An amendment was allowed by which complainant further shows "that the value of its business in the city of Ensley which respond-

ent has threatened and attempted to destroy is more than the sum of two thousand dollars, exclusive of all costs, and that the injuries to which orator will be subjected by these continued and continuous arrests will be more than two thousand dollars, exclusive of costs."

On the filing of the bill a temporary restraining order was issued. The bill prayed for an injunction specially enjoining and restraining said defendants and each of them, their attorneys, agents, and officers, from further molestation of orator's said agent in the city of Ensley, and from the enforcement of said ordinance and resolution. Demurrers are interposed to the bill, the substance of which, so far as necessary here to be noticed, is that the bill fails to show that the complainant has complied with the laws of the state of Alabama as a condition precedent to doing business in this state, or has a legal or equitable right to enter and do business in the state of Alabama. The bill does not show that complainant is engaged in interstate commerce exclusively; that it fails to show that the fee or license is not imposed on complainant for doing business in the state of Alabama from Ensley to other points therein, and from other points in the state to Ensley; that the bill fails to show that the complainant did not have an adequate remedy at law for the things complained of. The bill fails to show that the arrests were violations of the constitution and laws of the United States, and also fails to show that this court has jurisdiction of the subject-matter of the suit.

F. G. Du Bignon and London & London, for complainant.

W. J. Martin, M. J. Gregg, and Richard H. Fries, for respondent.

JONES, District Judge (after stating the facts as above). 1. The demurrers on the ground that "the bill fails to show that complainant has complied with the laws of Alabama as a condition precedent to its right to do business in this state," and that it also "fails to show that complainant is engaged in interstate commerce exclusively," are neither of them well taken. Vance v. W. A. Vandercock Co., 170 U. S. 455, 18 Sup. Ct. 674, 42 L. Ed. 1100; Crutcher v. Com., 141 U. S. 47, 11 Sup. Ct. 851, 35 L. Ed. 649.

2. In Le Loup v. Port of Mobile, 127 U. S. 647, 8 Sup. Ct. 1380, 32 L. Ed. 311, an ordinance of the city of Mobile, in legal terms identical with the ordinance of the city of Ensley, was declared unconstitutional. The court said: "It is urged that a portion of the telegraph company's business is internal to the state of Alabama, and therefore taxable by the state, but that fact does not remove the difficulty. The tax affects the whole business without discrimination." The license demanded here is therefore a lawless exaction: Pickard v. Car Co., 117 U. S. 34, 6 Sup. Ct. 635, 29 L. Ed. 785; Crutcher v. Com., 141 U. S. 58, 11 Sup. Ct. 851, 35 L. Ed. 649.

3. The right of the express company to do interstate business at Ensley is the very marrow of the contention here. The company by its bill says to the city: You have no right to meddle with my business. We ask the protection of the court to carry on our business in spite of the city. The city by its demurrer says to the company: The city has power to regulate and tax your right to do business. If you do not pay for the right, you shall not carry on business at all. Any decree on the merits of necessity settles these irreconcilable claims as to the right to do business. Inevitably the decree must determine the validity of the express company's claim of unrestricted right to do interstate business at Ensley. If the express company has that right, the bill must be retained, and the city author-

ities enjoined. If it has no such right, the bill must be dismissed, and the city authorities allowed to have their way. The extent of the particular burden is of no moment so long as there is a denial of any power to interfere with the business at all. The right to do business lies at the root of the whole controversy, and accompanies every phase of the contention. What is the value of the right? What is the amount of injury which complainant may sustain from the meddling with it? The allegations of the bill are that the value of the express company's right to do interstate business at Ensley, and the injury done to the express company's business by the arrests of its agent, would exceed $2,000. Clearly the controversy involves a value or amount within the jurisdiction. Complainant is seeking to enforce a right which is worth more than $2,000 to it, and to prevent damage threatened to an amount in excess of $2,000. Scott v. Donald, 165 U. S. 107, 17 Sup. Ct. 262, 41 L. Ed. 648; Railroad Co. v. McConnell (C. C.) 82 Fed. 72; Railroad Co. v. Frank (C. C.) 110 Fed. 689; Lanning v. Osborne (C. C.) 79 Fed. 657; Black, Dill. Rem. Causes, § 63.

Fishback v. Telegraph Co., 161 U. S. 96, 16 Sup. Ct. 506, 40 L. Ed. 630, upon which the respondent relies, is in no wise adverse to this conclusion. That case did not relate in any way to the right to license interstate business. The court declined to take jurisdiction there to enjoin the collection of taxes upon property, for the reason that the complainant united demands for relief against several persons in one bill, the claim against no one of the defendants representing an amount within the jurisdiction of the court. As such claims could not be aggregated in order to give jurisdiction, and as no one of the claims was for the requisite amount, the court dismissed the bill. That was all the case decided. If there could be any doubt as to this, it is put at rest by the decision in Scott v. Donald, 165 U. S. 107, 17 Sup. Ct. 262, 41 L. Ed. 648, which decided adversely to the contention here urged.

4. The necessities of this case do not require much discussion of the power of a court of equity to stay or enjoin criminal prosecuttions. It is to be borne in mind that the power of the state, much less of its municipal authorities, cannot extend to regulating interstate commerce. A license imposed for revenue is the exercise of the taxing, not the police, power, and prosecutions before the corporate tribunal for doing the business without a license are quasi penal only, at most. In substance and legal effect, they are civil proceedings. Royall v. Virginia, 116 U. S. 583, 6 Sup. Ct. 510, 29 L. Ed. 735. The "offense" is not a crime. The "offense" does not violate any law for the preservation of the health, morals, liberty, or peace of the citizens of Ensley. Enjoining prosecutions of the "offense" here, if there is any law to support it, does not in any wise interfere with the control of the local tribunals over the mass of governmental powers committed to them for the welfare of the people of Ensley under what, for want of a better name, we denominate the police power. It is about prosecutions for offenses under ordinances directed solely to that end that many of the authorities are strict in holding that courts of equity must not interfere.

Some of the authorities make this distinction the test, and unhesitatingly interfere, in cases of hardships, against prosecutions, even under valid ordinances, where the matter insisted upon by the municipal authorities relates to the enforcement of its business or corporate rights, or private rights, as distinguished from ordinances exerting the police power to protect the lives, health, peace, and morals of the citizens. Other courts, whenever property rights are involved, grant or refuse injunctions against the enforcement of municipal ordinances, although violations of them are punished by penal proceedings, on the same principles on which they are granted or refused as to private individuals.

The reason of the rule forbidding a court of equity to stay criminal proceedings can never apply in any degree to any prosecution in the criminal courts, unless the crime or offense for which the offender is prosecuted is cι ᴄated by some valid law or ordinance, or by laws or ordinances whose invalidity is doubtful and has not been pronounced by the courts of final resort. Here the court of final resort has spoken plainly and repeatedly. There is no crime here. There is no law which makes the failure to pay the license an offense. There is no law which authorizes any tribunal to fine and imprison complainant or its agent for refusing to pay the license tax. Every arrest under this ordinance is a lawless and forcible trespass. When a court of equity restrains a trespasser from coercing submission to a lawless demand, by prosecutions for alleged crimes before courts which have no jurisdiction to try the accusation, because the law neither makes such crime, nor authorizes any court to inquire into or to punish it, the jurisdiction of no tribunal is invaded, and "criminal proceedings" are not stayed in any moral or legal sense. The right and duty to intervene against such acts are in no wise affected by the so-called "criminal" feature, but depend entirely upon the equities of the particular case. There is nothing inconsistent with these views in the decisions in Re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, 31 L. Ed. 402, and in Harkrader v. Wadley, 172 U. S. 148, 19 Sup. Ct. 119, 43 L. Ed. 399. In re Sawyer related to removals from office, with which we are not here concerned. In the other case it is said: "It is not contended here that the state statute under which the county court of Wythe was proceeding was repugnant to the constitution or any law of the United States, or that the state did not have jurisdiction of the offenses charged or of the person of the accused." That case and this differ widely. There it was sought to enjoin the prosecution by state officers of an indictment for a felony found under valid laws of the state, and the injunction was really directed against the state itself. In re Ayres, 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 216. In Royall v. Virginia, 116 U. S. 583, 6 Sup. Ct. 510, 29 L. Ed. 735, speaking of criminal proceedings to collect a state license, the supreme court said: "It is legally equivalent to a civil action of debt upon the statute, and its substantial character is not changed by ᴄaḷḷing it a misdemeanor, and providing for its prosecution by information. The present case, therefore, stands precisely, so far as the constitutional questions arising in it are affected, as if it were a civil action in which the common-

wealth of Virginia was plaintiff, seeking to recover the amount due upon the tax and penalty."

5. The ordinance here in question is a palpable violation of the constitution. If the municipal authorities who are engaged in enforcing this ordinance are otherwise amenable to preventive remedies of a court of equity, upon what principle of law or morals can they evade the jurisdiction, because to the usurpation of power in passing the ordinance is added the further defiance of the constitution, by declaring resistance to the ordinance a penal offense against society, and punishing it accordingly? The fact that the city officers in making the arrests were themselves trespassers, and violators of the law of the land, using the physical power of the city to effect these arrests, can in no way affect the jurisdiction of this court, if a case is otherwise made out which justifies injunctive relief against them. Osborn v. Bank, 9 Wheat. 738, 6 L. Ed. 204; Davis v. Gray, 16 Wall. 203, 21 L. Ed. 447; In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092; City Council of Montgomery v. Louisville & N. R. Co., 84 Ala. 130, 4 South. 626; Port of Mobile v. Louisville & N. R. Co., 84 Ala. 116, 4 South. 106, 5 Am. St. Rep. 342.

The case made by the bill presents strong claims for equitable interference. Municipal authorities prescribe regulations for interstate commerce in violation of the law of the land, and attempt to intimidate and coerce those engaged in it to submit to their lawless exactions by arrests and threats of fine and imprisonment. They have already twice arrested defendant's agent, and solemnly avow a purpose to arrest and fine or imprison him daily until he succumbs to the lawless exactions of the city. The citizen thus oppressed and sought to be intimidated is engaged in interstate commerce. It is a common carrier also, possessed of corporate franchises, in whose orderly exercise citizens of this and other states have an interest. Its business would be ruined by the constant recurrence of these daily arrests having for their unlawful object the destruction of the business, unless those engineering the repeated trespasses are permitted to regulate interstate commerce. The constitutional right of the citizen to engage in interstate commerce cannot have full vigor and effect if the citizen cannot enforce his rights to carry on such business in the first instance by the speediest and most effective modes known to the law. The courts of the United States should not be astute to find technical reasons for denying the affirmative enforcement of such a right on the theory that the wrong would not be irreparable, if the money lawlessly exacted as a commutation for the right which the constitution gives without price can finally be recovered back from the wrongdoer. Compelling the citizen thus wronged to first pay the unlawful exaction, and then sue for damages or to recover the money, puts the constitution in abeyance for the time being, and forces the citizen temporarily to submit to the wrong as a condition precedent to enforcing the constitution. However proper such a view may be as regards ordinary trespasses to mere property rights, it seems out of place in dealing with the forcible denial of a fundamental constitutional right. The remedy at law in such a case does not seem "as practical and efficient to the ends of

justice and its prompt administration as the remedy in equity." Boyce v. Grundy, 3 Pet. 214, 7 L. Ed. 655. Be this as it may, it is settled that a court of equity should enjoin the enforcement of a municipal ordinance, though violations of it are punished criminally, when its enforcement will effect the illegal destruction of, or a grave interference with, a corporate franchise, in the operation of which the public have an interest. City Council of Montgomery v. Louisville & N. R. Co., 84 Ala. 130, 4 South. 626; Mayor, etc., v. Rodgers, 10 Ala. 47; 2 Dill. Mun. Corp. § 908. See, also, Street Railway Cases, 79 Ala. 465, 58 Am. Rep. 615; Quintinni v. City of Bay St. Louis, 64 Miss. 483, 1 South. 625, 60 Am. Rep. 62; Lottery Co. v. Fitzpatrick, 3 Woods, 222, Fed. Cas. No. 8,541; City of Atlanta v. Gate City Gaslight Co., 71 Ga. 107; Third Ave. R. Co. v. Mayor, etc., of New York, 54 N. Y. 159; Milling Co. v. Lee (Colo. App.) 29 Pac. 1037; Port of Mobile v. Louisville & N. R. Co., 84 Ala. 116, 4 South. 106, 5 Am. St. Rep. 342. If "courts of equity did not interfere in cases of this sort, there would be a great failure of justice in this country." 2 Story, Eq. Jur. § 928.

The demurrers are overruled, and respondent may have 30 days to answer. In the meanwhile the restraining order made on the filing of the bill is continued until the coming in of the answer and the further order of the court.