OVERTON et al. v. CITY OF LOS ANGELES et al.

(District Court, S. D. California, S. D.    February 26, 1920.)

No. E-48.

1. ATTORNEY AND CLIENT ⊚⟶28—PERSONS PRACTICING LAW MAY BE TAXED.
    The state may impose a license tax on the practice of law, and make it unlawful to practice law without procuring a license thereunder.

2. INJUNCTION ⊚⟶85(2)—ENFORCEMENT OF ORDINANCE WILL NOT BE RESTRAINED, THERE BEING A REMEDY AT LAW.
    Persons, claiming that a city ordinance imposing a license tax on the practice of law is invalid, have a plain, speedy, and adequate remedy at law by writ of error to review a judgment for the tax or a judgment of conviction, or by habeas corpus, and an injunction restraining its enforcement will be denied, unless the city authorities seek further litigation pending the prosecution of one of such remedies.

In Equity. Suit by Eugene Overton and others doing business as Overton, Lyman & Plumb against the City of Los Angeles and others. Bill dismissed.

Eugene Overton, E. D. Lyman, and P. B. Plumb, all of Los Angeles, Cal. (Geo. W. Prince, Jr., of Los Angeles, Cal., of counsel), for complainants.

Chas. S. Burnell, City Atty., and Wm. P. Mealey, Asst. City Atty., both of Los Angeles, Cal., for respondents.

TRIPPET, District Judge. This is a suit to enjoin the enforcement of an ordinance of the city of Los Angeles. The ordinance makes it unlawful for an attorney at law to practice his profession in the city without first procuring a license therefor, and makes the violation of any of the terms thereof a misdemeanor, with the usual penalties.

The complainants contend that the federal court admits a lawyer to practice, and that the privilege granted him by the federal court cannot be taxed by a municipality. The theory advanced is that to tax the privilege of practicing law in the federal court would be to tax one of our federal institutions, and would be in violation of the federal Constitution providing for federal courts; and the complainants argue that the power to tax would be a power to destroy.

[1] During the argument counsel expressed regret that they had been unable to find any federal authorities directly on the subject. My labors, however, have been rewarded by the very best of authority concerning the controversy. Brown v. State of Maryland, 12 Wheat. 419, 6 L. Ed. 678; Royall v. State of Virginia, 116 U. S. 572, 6 Sup. Ct. 510, 29 L. Ed. 735.

The opinion in Brown v. Maryland was written by Chief Justice Marshall. The case involved a statute of Maryland, which required importers of foreign articles to take out a license, and made it a penal offense for violating the law. Chief Justice Marshall held that the law was in violation of the provision of the Constitution, which provides that Congress shall have the power "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." In deciding the case the Chief Justice said:

"But, should it be proved that a duty on the article itself would be repugnant to the Constitution, it is still argued that this is not a tax upon the article, but on the person. The state, it is said, may tax occupations, and this is nothing more. It is impossible to conceal from ourselves that this is varying the form, without varying the substance. It is treating a prohibition, which is general, as if it were confined to a particular mode of doing the forbidden thing. All must perceive that a tax on the sale of an article, imported only for sale, is a tax on the article itself. It is true the state may tax occupations generally; but this tax must be paid by those who employ the individual, or is a tax on his business. *The lawyer, the physician, or the mechanic must either charge more on the article in which he deals, or the thing itself is taxed through his person. This the state has a right to do, because no constitutional prohibition extends to it.* So a tax on the occupation of an importer is, in like manner, a tax on importation. It must add to the price of the article, and be paid by the consumer, or by the importer himself, in like manner as a direct duty on the article itself would be made. This the state has not a right to do, because it is prohibited by the Constitution." (My italics.)

The statement here concerning the power of the state to tax the lawyer may be regarded as obiter dictum; but what this great jurist said concerning the Constitution of the United States must be accepted as authority, even though it were contained in a letter to a friend. And it would be presumptuous on my part not to heed what he says. However, the case of Brown v. Maryland has been cited by at least two state

courts of appellate jurisdiction as authority upon the very proposition here at issue. Besides, the opinion has been cited by the Supreme Court in the case of Royall v. Virginia, supra, being a case involving the right of a state to require a lawyer to pay a license tax.

I will briefly quote some of the sentences in that opinion. Justice Matthews, in deciding that case, used the following language:

"The Virginia Code of 1873 * * * provides that 'no person shall, without a license authorized by law, practice as an attorney at law.' * * * This revenue license, it will be observed, is different from and in addition to the license to practice law, given only to such as on examination, as to their character and acquirements, are found to be duly qualified therefor. * * *

"The payment required as a preliminary to the license is in the nature and form of a tax, and is a due to the state, which it may demand and exact from every one of its citizens who either will or must follow some business avocation within its limits, to the pursuit of which the assessment is made a condition precedent. It is an occupation tax, for which the license is merely a receipt and not an authority, except in that sense, because it is laid and collected as revenue, and not merely as incident to the general police power of the state, which, under certain circumstances and conditions, regulates certain employments with a view to the public health, comfort, and convenience. * * *

"That the party complying with the statutory conditions is entitled as of right to the license is conclusive that the payment is a tax laid for revenue and not exaction for purposes of regulation. * * * The occupation, which is the subject of the license, is lawful in itself, and is only prohibited for the purpose of the license; that is to say, prohibited in order to compel the taking out a license, and the license is required only as a convenient method of assessing and collecting the tax. Cooley on Taxation, 407. Such a license fee was held to be a tax by this court in the case of Brown v. Maryland, 12 Wheat. 419 [6 L. Ed. 678]. * * *

"As the sum demanded for the license is a tax, the provision for the punishment of one who pursues his profession without a license is a part of the revenue system of the state, and is a means merely of enforcing payment of the tax itself, or of a penalty for not paying it. It is legally equivalent to a civil action of debt upon the statute, and its substantial character is not changed by calling the default a misdemeanor, and providing for its prosecution by information."

[2] The complainants have a plain, speedy, and adequate remedy at law. It will be noted that the two cases above referred to were proceedings at law. The validity of the ordinance in question could be tested by securing a writ of error from the Supreme Court of the United States to our local courts to review either a civil judgment for the tax in question or a judgment of conviction for a misdemeanor as provided in the ordinance. Its validity could also be tested by securing a writ of habeas corpus from the Supreme Court of the state, if an arrest be made to enforce the ordinance, and by securing a writ of error from the Supreme Court of the United States to the Supreme Court of the state. This last method was pursued in testing the validity of an ordinance of the city of Los Angeles, concerning the franchise of the Economic Gas Company. Russell v. Sebastian, 233 U. S. 195, 34 Sup. Ct. 517, 58 L. Ed. 912, L. R. A. 1918E, 882, Ann. Cas. 1914C, 1282.

The three methods above suggested are efficient remedies, and much more expeditious than the slow processes of a court of equity. If either of the above remedies were pursued to test the validity of the

ordinance, and the city authorities were to seek further litigation pending the prosecution of one of the above remedies at law, it would then be time enough to invoke the interposition of a court of equity to stay the further proceedings under the ordinance. It would be a serious thing to tie up the administration of an ordinance of a city pending the final determination of a suit in equity, when a proceeding at law would be so much more expeditious.

The bill will be dismissed.