**PROGRESSIVE LABOR PARTY, and Committee Against Racism**

v.

**Emily LLOYD, Joseph F. Casazza, Joanne Prevost, George Paul, Joseph M. Jordan and Kevin H. White.**

Civ. A. No. 79–684–Z.

United States District Court,
D. Massachusetts.

March 21, 1980.

Mark D. Stern, East Boston, Mass., for plaintiffs.

Kelam S. Derderiam, Asst. Corp. Counsel, Boston, Mass., for defendants.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

This is the second challenge by plaintiffs to the constitutionality of the Boston ordinance (attached hereto) which sets forth the procedure and criteria by which the Traffic Commission ("Commission") issues permits for marches and demonstrations, and which empowers defendant Traffic Commissioners ("Commissioners"). In March 1979, plaintiffs applied to the Commission for a permit to conduct a political march in downtown Boston on May 1, 1979. The Commission subsequently granted the permit for parts of the requested route, denied the permit with respect to certain other requested streets, and approved a substitute route which the Commission devised. Plaintiffs then filed an action for declaratory and injunctive relief and sought a preliminary injunction to order approval of the route as requested arguing that the enforcement of the ordinance violated rights secured by the Constitution, and, additionally, that the ordinance was unconstitutional on its face. On April 18, 1979 the motion for injunction was denied.

■ Both parties have now moved for summary judgment with respect to plaintiffs' claim for declaratory judgment. Plaintiffs pray for declaratory relief to prevent the prospective enforcement of the ordinance as it applies to their planned marches[1], on three grounds: that the absence of a provision for prompt judicial review amounts to a denial of due process, that the procedural regimen does not insure regulation by least restrictive means, and, third, that the exception in the ordinance for events of "extraordinary public interest" creates unfettered discretion in the Commission to regulate expression. Because I find that none of these objections is availing, I determine that the ordinance is not constitutionally defective on its face.

The ordinance in question (The Traffic Rules and Regulations of the City of Boston, as amended January 11, 1979) makes parades and "other organized formation[s] of persons" illegal, unless the Commissioner issues a permit. "The Commissioner shall issue such permit in all cases except when the time, place and manner are not in conformity with rules set forth [in the ordinance]", if a written request[2] is filed at least 72 hours prior to the event, and if no activity for which a prior permit was issued will conflict. The ordinance thus provides that permits will presumptively issue, unless the Commission finds a conflict with another activity or nonconformity with one of the time, place or manner rules set forth in the ordinance. No time limit is placed on the Commission's decision, and no provision is made for review of the Commission's decision. The applicant, presumably, may test the Commission's denial by seeking injunctive relief in the courts.

The parties agree that the City may impose reasonable and impartial regulations

---

1. The fact that the date of the initial parade, May 1, 1979, has passed does not bar the Court's adjudication of this matter for lack of an actual "case or controversy", as specified by Article 3 of the Constitution. Plaintiffs have shown that they frequently seek permits for rallies and public gatherings, and that they intend to continue. The nature of such applications and judicial consideration is unique because of timing. In March of 1979 this Court denied the application for temporary relief with a view to the urgency of the matter, alert to the disadvantages in "endeavor[ing] to resolve as a matter of first impression on an emergency basis complex factual questions going to the form of relief, if any, which might [have been] appropriate . . ." *Collin v. Chicago Park*

District, 460 F.2d 746, 749 (7th Cir. 1972). Because the adequacy of such judicial review itself was a principal issue, plaintiff's quandary was that of obtaining review of the review procedure free from the press of emergency action. The claim is one which is capable of repetition that might otherwise escape appropriate review. See *Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 752–756, 96 S.Ct. 1251, 1258–1260, 47 L.Ed.2d 444 (1976).

2. The ordinance recites that the following information must be included in a request: the proposed participants, the date, time, size, route, and formation area of the march.

upon the time, place and manner of public demonstrations. *See, e. g., Schneider v. State of New Jersey,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939). They agree that the requirement of a permit is not, *per se,* unconstitutional. See *Cox v. State of New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941); *Poulos v. State of New Hampshire,* 345 U.S. 395, 409, 73 S.Ct. 760, 768, 97 L.Ed. 1105 (1953). The parties have focussed their dispute on the adequacy of specific procedures set forth in the Boston ordinance to satisfy constitutional requirements.

1. *Availability of Judicial Review*

The right to judicial review of the constitutionality of state action is beyond question. *See, e. g., Swann v. Adams,* 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967). Plaintiffs, however, suggest that enforcement of Boston's ordinance need not merely be amenable to the remedies usually available to citizens aggrieved by municipal decisions, but that the ordinance must structure the municipal decision to provide accelerated judicial review. They rely for this proposition particularly upon *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), which, in dictum, assessed the constitutionality of Birmingham's then newly-revised parade permit ordinance, and commented in a footnote that constitutionality "would depend upon, among other things, the availability of expeditious judicial review of the Commission's refusal of a permit." 394 U.S. at 155, n.4, 89 S.Ct. at 941, n.4. Plaintiffs argue that this reference to "expeditious judicial review" confirms their contention that issuance of parade permits belongs among those municipal regulations of protected liberties which require procedures akin to those developed in *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1968) to control censorship of motion pictures. There the Court concluded that state censorship actions must afford procedures to assure a "prompt final judicial

decision" of obscenity. 380 U.S., at 59, 85 S.Ct., at 739. Plaintiffs contend that the "expeditious judicial review" mentioned in the *Shuttlesworth* footnote entails a procedural mechanism like that of *Freedman,* 380 U.S., at 60, 85 S.Ct., at 739, assuring prompt final judicial review.

■ In determining whether a parade permit ordinance must include in its terms a mechanism for expedited review, the *Shuttlesworth* dictum, 394 U.S. at 155, fn. 4, 89 S.Ct. at 941, fn. 4, is clearly relevant authority that a municipality must provide procedures which enable effective judicial review of licensing refusals. In his concurring opinion in *Shuttlesworth, supra,* moreover, Justice Harlan addressed an additional concern:

> [parade permit] applications must be handled on an expedited basis so that rights of political expression will not be lost in a maze of cumbersome and slow-moving procedures. 394 U.S. at 163, 89 S.Ct. at 945 (Harlan, J., concurring).

For a number of reasons, not least of which is the fact that the Court has never extended the principle suggested in the concurring opinion to an otherwise constitutionally sufficient ordinance, it is clear that there is no requirement that a facially-neutral ordinance must provide by its terms for expedited review.

First, although *Shuttlesworth* addressed a case of first impression[3], *Poulos v. State of New Hampshire,* 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105 (1953) had earlier determined in a First Amendment licensing case "[t]he validity of this procedural requirement of New Hampshire—that the remedy for an unlawful denial of a license is mandamus or certiorari . . .", 345 U.S. at 418, 73 S.Ct. at 772 (Frankfurter, J., concurring). In approving the constitutional sufficiency of a Portsmouth, New Hampshire licensing ordinance, the Court acknowledged the "opportunity for arbitrary refusals that delay the exercise of rights." 345 U.S. at 405, 73 S.Ct. at 766. Notwithstand-

---

3. "None of our past decisions have squarely considered whether parade licenses must be handled on an expedited basis". *Shuttles-* *worth, supra,* 394 U.S. at 162, n.4, 89 S.Ct. at 944, n.4 (Harlan, J., concurring).

ing that opportunity for abuse, the Court relied on the limiting construction given the Portsmouth licensing ordinance, and concluded that

> "[w]e must and do assume that . . . the Portsmouth Council will promptly and fairly administer their responsibility in issuing permits on request." 345 U.S. at 408, 73 S.Ct. at 768.

This conclusion derives, in part, from the " 'general rule', [that] if an officer, entrusted with a licensing power, has only 'ministerial' duties to perform, 'the remedy by *mandamus* would be appropriate to compel the officer' to issue the license." 345 U.S. at 424, 73 S.Ct. at 776 (Douglas, J., dissenting; quoting *Royall v. State of Virginia*, 116 U.S. 572, 582, 6 S.Ct. 510, 515, 29 L.Ed. 735 (1886)).

Justice Harlan's concurring opinion in *Shuttlesworth* acknowledges the earlier decision in *Poulos*, and deems the remedy of mandamus satisfactory, because, in *Poulos*, "the time remaining was sufficient to obtain relief by way of mandamus", 394 U.S. at 162, n.4, 89 S.Ct. at 944–945, n.4 (Harlan, J., concurring). Expedited procedures, then, were a cure uniquely suited to the impediment to due process inherent in "unduly cumbersome and time-consuming procedures" *id.*, at 162, 89 S.Ct. at 944, and as Harlan's concurring opinion in *Shuttlesworth* acknowledged, *id.*, at 162, n.4, 89 S.Ct. at 944, n.4, the determination of *Poulos* that under an appropriately narrow "ministerial" ordinance, the right of mandamus would sufficiently protect against an unconstitutional deprivation of rights imposed by municipal delay.

Second, *Shuttlesworth* has never been invoked by a federal court to require expedited procedures in the terms of a content-neutral licensing statute. Plaintiffs suggest two instances in which courts of other jurisdictions, they argue, have decided to the contrary: *LeFlore v. Robinson*, 434 F.2d 933 (5th Cir. 1970), *vacated and opinion withdrawn*, 446 F.2d 715 (5th Cir. 1971), and

*Collin v. Chicago Park District*, 460 F.2d 746 (7th Cir. 1972). The *LeFlore* decision has been vacated, 446 F.2d 715 (5th Cir. 1971), and the opinion to which plaintiffs refer was withdrawn by the court in vacating its decision. *Id.* In any event, the case involved circumstances not wholly analogous to the instant case.[4] In *Collin*, Chicago's Park District denied an application for a National Socialist Party rally, fearing the "commotion" which would result from the expression of the Party's "abrasive and excoriating material", 460 F.2d at 748. The Court of Appeals looked to *Freedman v. Maryland* for the articulation of censorship procedures and required those procedures for the City's conceded exercise of content-based restriction on speech. Content-neutral regulation was not involved and defendants did not claim that it was. Similar facts and a similar conclusion are recited in *National Socialist Party of America v. Village of Skokie*, 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977).

Finally, *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), the basis of the Court's mandate of strict procedures to insure timely hearing in censorship cases, is specific in requiring that due process procedures address the actual circumstances of the threatened municipal restraint:

> [f]ilms differ from other forms of expression . . . and the nature of the motion picture industry may suggest different time limits for a judicial determination . . . we do not mean to lay down rigid time limits or procedures, but to suggest considerations . . . to avoid the potentially chilling effect of the . . . statute on protected expression. 380 U.S. at 61, 85 S.Ct. at 740.

Thus, to determine whether Boston's ordinance satisfies the general rule that neutral ministerial statutes require no extraordinary procedural safeguards, we must consider whether the circumstances of the ordinance demand such extraordinary procedural safeguards.

---

**4.** *LeFlore* weighed the dangers inherent in "slow, cumbersome or onerous . . . licensing procedures," 434 F.2d at 946, and the possibility that there had been municipal bad faith in reviewing the denial of a parade permit by the black community of Mobile, Alabama.

That Boston's Ordinance sets forth no mechanical time limits for action by the Commission is undisputed. Indeed, a requirement that a Commission decision issue within a fixed time prior to a requested date would oblige the City to set an even earlier application deadline, and the enterprise of public demonstration might effectively be denied to those whose public expression was less elaborately planned. Earlier application requirements, in short, might render a parade licensing ordinance "unduly time-consuming and cumbersome" and in fact thwart the interest of due process.

Currently applicants must file for a parade permit in Boston at least 72 hours in advance of the requested date. The Commission then applies the "public safety" criteria set forth in the ordinance and either modifies the route—in its words "provided that the applicant's right of free speech is not denied thereby"—or denies the permit. At that point, an applicant denied a permit may seek injunctive relief to prevent enforcement of the order.

 The Boston ordinance permits the denial of parade licenses only when the sole purpose of the formation is commercial advertising; when the proposed march would disrupt a street or public place which is "ordinarily subject to great congestion . . and is chiefly of a business or mercantile character", and then, only during business hours; or when the necessary diversion of police protection "would deny reasonable police protection to the City." Further, such denial may be avoided if the Commissioner modifies the request to comport with the above requirements (as she did in the instant case), so long as the modification does not abridge protected liberties. I find and determine that the regulations set forth in the ordinance are specific criteria for the licensing decision and are narrowly limited in their scope to such considerations of time, place and manner as are necessary to the interests of public order and safety. Cf. *Shuttlesworth v. City of Birmingham, supra*, 394 U.S. at 154–155, 89 S.Ct. at 940–941. The constitutionality of such procedures has been accepted by the United States Supreme Court, so long as the licensing requirements were narrowly fitted to the task of imposing impartial and specific time, place and manner restrictions upon applicants for demonstration permits. *Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). See *Shuttlesworth v. City of Birmingham, Ala., supra*, 394 U.S. at 155, 89 S.Ct. at 941. Further, when municipalities regulate public demonstrations in observance of "narrow, objective and definite standards to guide the licensing authority," *Shuttlesworth, supra*, 394 U.S. at 151, 89 S.Ct. at 938, their decisions are cloaked with the presumption of neutrality with respect to the content of the speech regulated. *Id.*; *Poulos v. State of New Hampshire, supra*, 345 U.S. at 405, 73 S.Ct. at 766.

A municipal decision pursuant to these regulations must be subject to judicial review. But the municipal decision under such definite criteria does not come to the Court "bearing a heavy presumption against its constitutional validity," *Bantam Books Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963), as a prior restraint. It comes to the Court as "a ministerial, police routine for adjusting the rights of citizens . . ." *Poulos v. State of New Hampshire*, 345 U.S. 395, 403, 73 S.Ct. 760, 765, 97 L.Ed. 1105 (1953). The difference in Constitutional posture is critical.

In this case, Boston's neutral ordinance has not annointed a commission of censors. It has empowered officers whose authority is limited to decisions of public safety, and whose decisions are fettered by specific neutral criteria. Their decisions must certainly be amenable to review, but the procedure for review is that appropriate to ministerial decision.

All remedies available to attack presumptively ministerial decisions which an aggrieved deems unconstitutional are available to challenge decisions which result from Boston's ordinance. There is no authority for censorship in the terms of the ordinance, and the narrow language, under the

good faith application by the Commissioners, which, for the purpose of determining facial validity I must assume, *See Poulos v. State of New Hampshire, supra,* 345 U.S. at 404–406, 73 S.Ct. at 766–767, triggers none of the "dangers of the censorship system." Thus, the ordinance, on its face, meets the requirement that appropriate judicial review be available. I, therefore, conclude that the ordinance satisfies the Due Process Clause of the Fourteenth Amendment.

2. *Regulation by Least Restrictive Means*

■ Plaintiffs' second objection is to the claimed failure of the ordinance to regulate public demonstration by the "least restrictive means", *See, e. g., Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). Plaintiffs argue that the procedure of application and denial sweeps with unwarranted breadth to prevent protected expression in the professed interest of public safety and order. The Boston ordinance, however, makes specific provision for the accommodation of competing public interests of free expression and public safety. The ordinance enables the Commissioner to "modify the route, time and place of a parade to facilitate crowd control in the interest of relieving congestion and promoting public safety, provided that the applicant's right of free speech is not denied thereby". The provision provides a method to permit a parade or march when an otherwise conflicting or impermissible route has been requested, and, by neutral application assures a mechanism by which the interest of public safety will intrude upon public expression only as necessary. The provision for such flexibility enables the Commission to impose the "less drastic way of satisfying its legitimate interests," and thus to provide maximum freedom for the exercise of personal liberties. *See, NAACP v. Alabama,* 357 U.S. 449, 463, 78 S.Ct. 1163, 1172, 2 L.Ed.2d 1488 (1958). There is, in this regard, no Constitutional infirmity in the ordinance.

3. *Extraordinary Public Event Provision*

■ Plaintiffs raise a final objection, arguing that a provision to allow departure from the ordinary uses of streets or public places for noncustomary occasions of "extraordinary public interest" grants unfettered discretion to the Commission to deny permits. At the hearing on the motion, defendants established that the provision—which had never been invoked—contemplated unique historic events and gave as an example a visit to Boston by a foreign Head of State.

The constitutional adequacy of such a provision could ordinarily be measured by the construction given by state courts to the terms of the ordinance. *Cox v. State of New Hampshire, supra,* 312 U.S. at 577, 61 S.Ct. at 766; *Poulos v. State of New Hampshire, supra,* 345 U.S. at 409, 73 S.Ct. at 768; *Shuttlesworth v. City of Birmingham, supra,* 394 U.S. at 155, 89 S.Ct. at 941. If by such construction "the state left to the licensing officials . . . no power to discriminate, no control of speech", *Poulos v. State of New Hampshire,* 345 U.S., at 404, 73 S.Ct., at 766, "[s]uch state conclusions are not invalid, although they leave opportunity for arbitrary refusals that delay the exercise of rights", 345 U.S., at 405, 73 S.Ct., at 766. In this case, however, no such construction had been made, if only because defendants had—consistent with their representations—entirely refrained from employing the provision. On the basis of evidence presented, I determine that the language by which the "extraordinary" public event provision is limited, its employment to date and the testimony of City practices is adequate to insure facially neutral application of the provision. The dangers of bad faith application of the clause—*e. g.,* the licensing of an otherwise impermissible political parade in the guise of an event of "extraordinary public interest"—could be remedied, and the absence of provisions for that unsubstantiated danger cannot thwart an otherwise facially permissible ordinance. *Poulos v. New Hampshire,* 345 U.S. at 405, 73 S.Ct. at 766. Plaintiffs' final claim is thus unavailing and their motion for summary judgment is denied. Defendants' motion for summary judgment is allowed and the complaint may be dismissed.

APPENDIX

CITY OF BOSTON

TRAFFIC AND PARKING DEPARTMENT

January 11, 1979

WHEREAS, the Traffic and Parking Commission is not in session, NOW, THEREFORE, under the authority granted to me under St.1929, c. 263, s. 2B, as amended, I hereby promulgate the following:

The Traffic Rules and Regulations of the City of Boston are amended as follows, effective January 11, 1979.

Article VIII, Section 1 (Parades, Processions & Formations) is amended by striking it out in its entirety and inserting the following in its place:

No person shall take part in any parade, procession or other organized formation of persons or vehicles, other than a funeral procession or a picket line, in or upon any street, way, highway, road or parkway under the control of the City unless the Commissioner has granted a permit for such parade, procession or formation. The Commissioner shall issue such permit in all cases except where the time, place and manner are not in conformity with the rules set forth below and except where the permit would conflict as to time or place with a permit previously issued. No fee shall be charged for any such permit.

The written request for the permit shall be filed with the Commissioner at least 72 hours prior to the occurrence and should include the following:

a. The date and starting time.

b. The name and address and telephone number of applicant and the name of the organization involved.

c. The formation or assembly area and time therefor.

d. The route of the parade or motorcade and what portions of the streets traversed may be occupied by such parade or motorcade.

e. The approximate number of people and vehicles in the parade or motorcade.

No permit shall be issued authorizing a parade, procession or formation under the following conditions:

a. When the sole purpose is advertising any product, goods, wares, merchandise or event, and is designed to be held for private profit.

b. When the time, route and size will disrupt the use of any street or any public place, or material portion thereof which is ordinarily subject to great congestion or traffic and is chiefly of a business or mercantile character, except upon those holidays or Sundays when places of business along the route proposed are closed.

c. When it is of a size or nature that requires the diversion of so great a number of police officers of the City to properly police the line of movement and the areas contiguous thereto, that allowing the parade or motorcade would deny reasonable police protection to the City.

Special permits for occasions of extraordinary public interest, not annual or customary, or not so intended to be, may be granted by the Commissioner for any street or public place, and for any day or hour, with the approval of a majority of the Traffic Commission.

The Commissioner shall have the authority to modify the route, time and place of a parade to facilitate crowd control in the interest of relieving congestion and promoting public safety, provided that the applicant's right of free speech is not denied thereby.

/s/ Emily Lloyd
Commissioner

EL/RFD/mcs

A true copy. Attest:

/s/ Edna L. Jacobs
Executive Secretary