**N.A.A.C.P., WESTERN REGION and Berkeley - Albany - Richmond - Kensington Chapter, American Civil Liberties Union of Northern California, Plaintiffs-Appellants,**

v.

**CITY OF RICHMOND, Leo Garfield, Chief of Police; John Neely, Police Lieutenant; Thomas Corcoran, Mayor; George Livingston, Nathaniel Bates, Don Greco, A.E. Silva, Don Wagerman, Lonnie Washington, Jr.; John Ziesenhenne, Richard Griffin, as members of the Richmond City Council, et al., Defendants-Appellees.**

**No. 83–2341.**

United States Court of Appeals, Ninth Circuit.

Submitted May 16, 1984.

Decided Sept. 28, 1984.

Amitai Schwartz, American Civil Liberties Union Foundation of Northern California, San Francisco, Cal., for plaintiffs-appellants.

Malcolm Hunter, Richmond, Cal., for defendants-appellees.

Before WRIGHT, HUG and NELSON, Circuit Judges.

NELSON, Circuit Judge:

The National Association for the Advancement of Colored People ("NAACP") and the American Civil Liberties Union ("ACLU") challenge the constitutionality of a municipal ordinance that regulates parades on the city streets of Richmond, California.[1] The district court granted summary judgment for the City of Richmond, holding that the case was not justiciable and that, in any event, the ordinance complies with the first amendment. We reverse.

FACTS AND PROCEDURAL HISTORY

On September 28, 1982, Willie Lee Drumgoole, a black man, died in the custody of the Richmond police. Two weeks later, the City announced that it would not investigate the incident. To protest Drumgoole's death, the allegedly racist practices of the police department, and the City's failure to take action, the NAACP decided to march through downtown Richmond and hold a rally at the Civic Center.

Section 11.84.010 of the Richmond Municipal Code "RMC" prohibits parades on city streets without a permit from the Chief of Police, and section 11.84.020 requires the application for a parade permit to be submitted at least 20 days in advance. The NAACP applied for a permit on October 18 for a proposed parade on October 23. The Chief of Police denied the application on the ground that the NAACP had failed to comply with the advance notice requirement. To obtain a waiver of this requirement, the NAACP appealed to the City Council. RMC section 11.84.030 gives the Council the discretion to waive the 20-day deadline if it finds "unusual circumstances." Although the Council was scheduled to hold its next meeting that same evening, October 18, the meeting was cancelled because several Council members were out of town.[2]

On October 20, the NAACP filed suit under 42 U.S.C. § 1983 for declaratory and

---

1. Richmond Municipal Code Chapter 11.84 provides in relevant part:

    11.84.010 *Permit required.* No person shall conduct a parade in or upon the public streets within the city of Richmond or participate in any such parade unless and until a permit to conduct such parade has been obtained from the chief of police of the city . . . .

    11.84.020 *Permit—Application—Granting or denial.* Any person desirous of conducting a parade shall apply to the chief for a permit at least twenty days in advance of the proposed parade . . . .
    If there is no prior application for a parade at said time and place and a parade at the requested time and place will not cause an undue burden upon the movement of vehicular traffic and will not conflict with any project of the department of public works or department of recreation and parks, the chief shall issue a permit granting the application. In the event that there is a prior application for a parade to be held at said time and place or a parade at the requested time and place will cause an undue burden upon the movement of vehicular traffic or upon any project of the department of public works or department of recreation and parks, the chief may deny the permit therefor. The applicant for the parade permit shall be notified in writing of the action of the chief in granting or denying the permit at least thirteen days prior to the date of the proposed parade. In the event the application is denied, the written notice of such denial shall set forth the reasons therefor.

    11.84.030 *Permit—Denial—Appeal—Waiver of filing time requirement.* Upon a denial by the chief of an application made in pursuance of Section 11.84.020 of this chapter, the applicant may appeal from the determination of the chief within two days thereafter to the city council by filing his application with the clerk who shall set the appeal for hearing by the council at its next meeting. Upon such appeal, the council may reverse, affirm or modify in any regard the determination of the chief. To carry out the judgment of the council upon appeal, the chief shall be directed to act in conformity with the judgment of the council.
    In the event an application is not filed within the required time, as specified in Section 11.84.020 of this chapter, the applicant may request a waiver of such requirement by the city council at its next regular meeting, or at a special meeting which may be called prior thereto by the city council to consider such matter, and the city council, if it finds unusual circumstances and in the exercise of its sound discretion, may waive such requirement.

2. The next Council meeting was scheduled to take place on October 25, two days after the proposed march.

injunctive relief, challenging the constitutionality of the parade ordinance under the first and fourteenth amendments. The district court refused to issue a temporary restraining order against Richmond, and plaintiffs appealed to this court. The Ninth Circuit motions panel helped the parties work out an interim compromise. The City consented to permit the parade to take place on the date desired, and the NAACP agreed to march on the sidewalks rather than on the streets. The rally and march took place on October 23 in accordance with the compromise order. The motions panel then dismissed the interlocutory appeal and remanded the case to the district court. *NAACP v. City of Richmond,* No. 82–4612.

Upon return of the case to the district court, both sides filed declarations and moved for summary judgment. The court granted the City's motion, holding that the case was not justiciable and that the parade ordinance is, in any event, constitutional. It also denied plaintiff's motion for attorneys' fees under 42 U.S.C. § 1988 for obtaining the right to march on October 23. This appeal on the merits followed.

DISCUSSION

I. THE CASE IS JUSTICIABLE.

The district court ruled that the NAACP lacked standing to challenge the parade ordinance, and that the case was moot. On appeal, the question whether summary judgment was properly granted is one of law. *Boone v. Mechanical Specialities Co.,* 609 F.2d 956, 958 (9th Cir. 1979). The standard governing this court's review is the same as that employed by the trial court under Fed.R.Civ.P. 56(c). *Twentieth Century-Fox Film Corp. v. MCA, Inc.,* 715 F.2d 1327, 1328 (9th Cir.1983). We view the evidence and inferences therefrom in the light most favorable to the losing party. *Angel v. Seattle-First National Bank,* 653 F.2d 1293, 1299 (9th Cir. 1981).

A. Standing

The NAACP challenged the advance notice provision and the discretionary waiver provision of the parade ordinance and asserted that the ordinance is invalid on its face. The district court held that the NAACP lacked standing on all three questions. These issues will be addressed *seriatim,* together with the Article III and prudential considerations employed in determinations of standing.

Article III of the Constitution limits the exercise of federal judicial power to actual cases and controversies. *See, e.g., Flast v. Cohen,* 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–1953, 20 L.Ed.2d 947 (1968). Litigants are required to demonstrate a "personal stake in the outcome" of a case to guarantee the "concrete adverseness which sharpens the presentation of issues" necessary for proper resolution of constitutional questions. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). To comply with Article III, the plaintiff must show: (1) a distinct and palpable injury, (2) a causal connection between the injury and the defendant's conduct, and (3) a substantial likelihood that the relief requested will redress the injury. *See Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (*"Valley Forge"*).

1. *Advance notice requirement*

The NAACP is an organization whose members have long engaged in demonstrations and other protests against perceived racial discrimination. *See, e.g., NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 911–12, 102 S.Ct. 3409, 3425–26, 73 L.Ed.2d 1215 (1982). These protests frequently occur in response to topical events, and their effectiveness may depend on both their immediacy and the forum where they take place. Here Richmond denied the NAACP's request to conduct a street parade protesting the death of a black man in government custody because the application violated RMC § 11.84.020. The NAACP arguably suffered actual injury as a result. *See Secretary of State of Maryland v. J.H. Munson Co.,* —— U.S.

——, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984) ("*Munson*"). It has standing, therefore, to contest the advance notice requirement.

### 2. *Discretionary waiver provision*

■ The challenge to Richmond's discretionary waiver provision, by contrast, is solely anticipatory. The City Council did not exercise its discretion to refuse to waive the notice requirement, but simply failed to convene. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, federal courts may declare the rights and duties of litigants before a law is violated. *See* 10A Wright, Miller & Cooper, *Federal Practice and Procedure* § 2757 at 582–83 ("Wright & Miller"). For his anticipatory claim to satisfy the case or controversy requirement, however, the plaintiff is required to show that he is seriously interested in subjecting himself to, and the defendant seriously intent on enforcing, the challenged measure. *See, e.g., J.N.S., Inc. v. Indiana,* 712 F.2d 303, 305 (7th Cir.1983); *Stoianoff v. Montana,* 695 F.2d 1214, 1223 (9th Cir. 1983); *Internat'l Soc. for Krishna Consciousness v. Eaves,* 601 F.2d 809, 817 (5th Cir.1979).[3]

■ The NAACP has displayed the requisite interest in subjecting itself to the discretion vested by the ordinance. It has already attempted to bring one application before the Council, and was spared the exercise of the Council's discretion only by the unexpected absence of a few Council members. *See Reeves v. McConn,* 631 F.2d 377, 381 (5th Cir.1980). Similarly, the Council has displayed an intent to use its discretion. It has never indicated that it

considers the waiver provision moribund. *See, e.g., Doe v. Bolton,* 410 U.S. 179, 188–89, 93 S.Ct. 739, 745–46, 35 L.Ed.2d 201 (1973). In fact, the district court found that this case would not recur precisely because the Council's policy is to hear such requests.[4] The NAACP's fear that the Council will exercise uncircumscribed discretion, therefore, is far from hypothetical or abstract. *See Babbitt v. United Farm Workers,* 442 U.S. 289, 297–98, 99 S.Ct. 2301, 2308–09, 60 L.Ed.2d 895 (1979); *Steffel v. Thompson,* 415 U.S. 452, 458–59, 94 S.Ct. 1209, 1215–16, 39 L.Ed.2d 505 (1974). This being so, the NAACP has standing to challenge the discretionary waiver provision.

In addition to the restrictions on standing imposed by Article III, federal courts also limit for prudential reasons the claims which litigants may bring. In *Valley Forge, supra,* the Supreme Court identified three prudential considerations: (1) the plaintiff must ordinarily assert his own interests, and cannot base his claim on the rights of third parties, (2) his asserted harm must not be merely a "generalized grievance" shared in similar measure by all or a large class of citizens, and (3) his interest must arguably be within the "zone of interests" regulated by the statute. *See* 454 U.S. at 474–75, 102 S.Ct. at 759–60; *Scott v. Rosenberg,* 702 F.2d 1263, 1267–68 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984).

We find all of these concerns satisfied here. First, the NAACP asserts its own interest in conducting spontaneous parades. It does not base its claim solely on

---

**3.** The reasons for avoiding judicial action in such cases are also embraced by the doctrine of ripeness. *See Entertainment Concepts, Inc. v. Maciejewski,* 631 F.2d 497, 500 (7th Cir.1980), *cert. denied,* 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981). Like standing, ripeness is founded in constitutional and policy concerns that limit the exercise of federal judicial power. The central concern of ripeness is whether the case involves contingent events that may not occur as predicted. *See* 13 Wright & Miller, § 3532 at 238. Questions of ripeness frequently arise in cases seeking declaratory relief which anticipate actions or events. It has been sug-

gested that when the justiciability inquiry turns on finding present injury from contingent future events, there may be no value in distinguishing between ripeness and standing concerns. *Id.* at 239.

**4.** This finding ultimately led the district court to conclude that the case was moot. The court decided that the Council's failure to provide a timely appeal was unlikely to recur. We believe, however, that the case would not be moot even if the Council had heard the appeal. *See* Section I(B) *infra.*

the putative free speech rights of a third party. Second, it is self-evident that the NAACP's particular desire to hold public demonstrations against allegedly racist policies is not shared in similar measure by the community at large. Third, the ordinance by its terms regulates parade permits. The NAACP's application of October 18 evinced an interest which falls within this statutory zone. In short, neither Article III requirements nor prudential factors undercut the NAACP's standing to bring this lawsuit.

### 3. Overbreadth

■ The NAACP also argues that the Richmond ordinance is invalid on its face. The district court held that the NAACP lacks "standing" to bring a facial attack because the ordinance's alleged overbreadth is not substantial. We disagree with the manner in which the district court framed this issue.

Some facial challenges require courts to ignore the prudential rule that a litigant has standing to vindicate only his own constitutional rights. *City Council v. Taxpayers for Vincent,* — U.S. ——, 104 S.Ct. 2118, 2125, 80 L.Ed.2d 772 (1984) (*"Vincent"*). A litigant is allowed, for example, to assert that enforcing a statute will chill the protected speech of third parties, even though as applied to him the law is constitutional. *Id.* In such cases, the court entertains the claim because it recognizes that those whose expression is chilled cannot be expected to adjudicate their rights, since by definition they are unwilling to disobey the law. *See* L. Tribe, *American Constitutional Law* 720 (1978) ("L. Tribe"). The concern that constitutional adjudication be avoided whenever possible is simply outweighed by the risk to society of losing the speech of those deterred from engaging in protected expression. *Munson,* 104 S.Ct. at 2847.

There is another "quite different" way in which a plaintiff may challenge a statute on its face. *Vincent,* 104 S.Ct. at 2124. A litigant may contend, for example, that a statute is not only unconstitutional as applied to his conduct, but also unconstitutional on its face because "any attempt to enforce such legislation would create an unacceptable risk of the suppression of ideas." *Id.* at 2125. In cases of this type, a holding of facial invalidity expresses the conclusion that the statute restricts protected activity in every conceivable application. *Munson,* 104 S.Ct. at 2852 n. 13. Because the plaintiff asserts his own injury as the basis for judicial relief, however, the court can entertain his claim without departing from traditional standing concerns. *Vincent,* 104 S.Ct. at 2125.

The NAACP raises the second type of facial challenge here. It argues both that its own activity is protected by the first amendment and that the Richmond ordinance impermissibly suppresses the speech of all potential marchers. The district court's holding that the NAACP lacks standing to bring such a challenge thus mischaracterized the issue. We have already established that the NAACP has met the threshold standing inquiry. That being so, its claim that the ordinance is facially invalid is essentially an argument about the nature of the remedy we should provide. *See Munson,* 104 S.Ct. at 2848. The Supreme Court has cautioned us that striking down a statute on its face for alleged overbreadth is manifestly "strong medicine." *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). To justify such action, we must first decide that the asserted overbreadth is both real and substantial. *Id.* at 615, 93 S.Ct. at 2917. This determination, however, is properly reserved for the merits. *Munson,* 104 S.Ct. at 2848. Having concluded that standing exists, we discuss alleged overbreadth later. *See* section III *infra.*

### B. Mootness

■ The case or controversy requirement of Article III also deprives federal courts of jurisdiction to hear moot cases. *See, e.g., DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974). A case becomes moot when interim relief or events have eradicated the

effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur. *See, e.g., County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); *Lodge 1380, Broth. of Ry. etc. v. Dennis,* 625 F.2d 819, 822 (9th Cir.1980). For his lawsuit to meet minimum standards of continuing life, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision. *See Iron Arrow Honor Society v. Heckler,* —— U.S. ——, 104 S.Ct. 373, 374–75, 78 L.Ed.2d 58 (1983); 13 Wright & Miller § 3533 at 263.[5]

■ The Supreme Court has stated, however, that a case is not moot if the underlying dispute between the parties is "capable of repetition, yet evading review." *Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 546, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976), *quoting Southern Pacific Terminal Co. v. I.C.C.,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Two elements are necessary for a dispute to satisfy this standard: (1) the duration of the challenged action or injury must be too short to be fully litigated; and (2) there must be a reasonable likelihood that the same party will be subject to the action again. *See Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975); *Planned Parenthood v. Arizona,* 718 F.2d 938, 949 (9th Cir.1983).

■ Both of these elements are present here. The NAACP cannot fully litigate the validity of the Richmond ordinance during the time it wishes to exercise free expression. The alleged injury is fleeting because the capacity of a topical parade to communicate may be diminished the longer it is delayed. Where injunctive relief is requested and denied, the injury endures only until topical speech is no longer topical. Plenary review of the difficult constitutional questions raised is simply not possible within so brief a period. *See, e.g., First National Bank of Boston v. Bellotti,* 435 U.S. 765, 774, 98 S.Ct. 1407, 1414, 55 L.Ed.2d 707 (1978) (18–month election period too brief); *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973) (human gestation period too short). We have reached a decision in this case, for example, almost two years after the NAACP filed suit, and any future action would in all likelihood take as long. Where the challenged statute imposes a prior restraint on speech, and the expressiveness of that speech depends on its spontaneity, we believe the case is likely to be one which would evade review.

■ Nor is there any serious doubt that plaintiff can reasonably expect to be subject to the ordinance again. Drumgoole's death, for example, marked the fifth time a black man had been killed in a conflict with Richmond police within the previous three years. The NAACP has an active and continuing interest in the local racial problems which allegedly give rise to such incidents. *See Baldwin v. Redwood City,* 540 F.2d 1360, 1365 (9th Cir.1976), *cert. denied,* 431 U.S. 913, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). Furthermore, there is no reason to believe that Richmond will refrain from enforcing the parade ordinance in the future. *See First National Bank of Boston,* 435 U.S. at 775, 98 S.Ct. at 1415.[6] The effect of the statute on arguably protected speech will therefore persist. *See Storer v. Brown,* 415 U.S. 724, 737 n. 8, 94 S.Ct. 1274, 1282 n. 8, 39

---

**5.** One commentator has suggested that mootness represents a time dimension of standing: it requires that the interests originally sufficient to confer standing persist throughout the suit. *See* Monaghan, *Constitutional Adjudication: The Who and When,* 82 Yale L.J. 1363, 1384 (1973).

**6.** A case does not become moot even if a defendant voluntarily discontinues the allegedly illegal activity. *See Iron Arrow Honor Society v. Heckler,* —— U.S. ——, 104 S.Ct. 373, 375, 78 L.Ed.2d

58 (1983). Otherwise, the defendant would be free to "return to his old ways" once the danger of a lawsuit has passed. *Id., quoting United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). To establish mootness, therefore, the defendant must carry the "heavy burden" of demonstrating that "there is no reasonable likelihood that the wrong will be repeated." *Id.* Richmond has made no such showing here.

L.Ed.2d 714 (1974).[7] Accordingly, we conclude that this case is justiciable and proceed to the merits.

## II. THE 20-DAY ADVANCE NOTICE REQUIREMENT IS UNCONSTITUTIONAL.

The Richmond parade ordinance requires potential paraders to request a permit 20 days before the parade is to occur. The permit will issue at least 13 days before the day of the parade unless another parade is scheduled for the same time and place or the requested parade would unduly burden automotive traffic. The NAACP challenges this ordinance as an unconstitutional restraint on speech.

At the outset, we must determine whether the Richmond parade ordinance is a content-neutral law. The ordinance requires all speakers, regardless of the content of their message, to provide 20 days advance notice of a parade. There is no evidence on the record suggesting that this ordinance was enacted or enforced to censor particular viewpoints. Nor is there any claim that the ordinance is intended to suppress specific ideas that the government finds distasteful. We conclude that the law is facially content-neutral. *See Vincent,* 104 S.Ct. at 2128–29.

In *Vincent,* the Supreme Court outlined the framework for reviewing a content-neutral ordinance that regulates an activity involving both speech and non-speech elements:

> [A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restric-

tion on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.* at 2129, *quoting United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). Two other factors considered in *Vincent* were whether speech was restricted in a public forum, 104 S.Ct. at 2134 & n. 32, and whether the prohibition on speech, although facially content-neutral, was in effect content-skewed. 104 S.Ct. at 2133 & n. 30. Of course, the government bears the burden of proof on these issues as it does in all First Amendment cases. *See Rosen v. Port of Portland,* 641 F.2d 1243, 1246–47 (9th Cir.1981) (*"Rosen "*). *See also Vance v. Universal Amusement Co., Inc.,* 445 U.S. 308, 317, 100 S.Ct. 1156, 1162, 63 L.Ed.2d 413 (1980) (presumption of unconstitutionality particularly heavy when law imposes prior restraint). In this case, appellants do not contend that the parade ordinance is beyond the constitutional power of the government, or that the city's interest in regulating traffic is related to the suppression of speech. Thus, we must determine only whether the government interest is sufficiently large to justify the effect of the ordinance on speech, and whether that effect is greater than necessary to accomplish the city's purpose. *Vincent,* 104 S.Ct. at 2129.

### A. There is a Substantial Government Interest in the Parade Ordinance.

In *Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949), the Supreme Court upheld a city's power to protect its citizens from modes of expression that constitute a public nuisance. The Court decided that the state had a substantial interest in protecting its citizens from the unwelcome noise of sound trucks. Similarly, in

---

**7.** In *Vincent, supra,* supporters of a political candidate and the candidate's sign supplier challenged the constitutionality of an ordinance prohibiting the posting of signs on public property. The court of appeals considered whether the case might be moot because there was no indication that Vincent himself would again seek public office. *See* 682 F.2d 847, 849 n. 1 (9th Cir.1982), *rev'd on other grounds,* —— U.S. ——,

104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). The court of appeals found that the sign company's interest in printing posters in future campaigns, combined with the City's presumed intent to continue enforcing the ordinance, brought the case within the "capable of repetition, yet evading review" exception to the mootness doctrine. *Id.* Apparently the Supreme Court did not disagree, because it never discussed mootness.

*Vincent,* 104 S.Ct. at 2130, the Court found a substantial government interest in avoiding the visual clutter caused by signs posted on public property.

On similar grounds, we concluded in *Rosen* that the state has a legitimate interest in parade ordinances. We acknowledged the substantial "governmental interest in regulating parades, when large groups use public streets and disrupt traffic by causing major arteries to be closed and transportation rerouted." 641 F.2d at 1247. We reaffirm that reasoning here.

### B. The Parade Ordinance is Not the Least Restrictive Means of Serving the Government Interest.

Although there is a substantial government interest in preventing parades from obstructing traffic, the Richmond 20-day advance notice requirement is not the least restrictive means for achieving that end.

Initially, it is indisputable that the Richmond parade ordinance restricts access to a public forum. Public streets are the prototypal example of a public forum. *See, e.g., Hague v. CIO,* 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939) ("Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public."). Since the Richmond ordinance restricts access to the streets, it is subject to a particularly high degree of scrutiny. Public fora "represent areas within which tolerance for inhibitions on speech, petition, and assembly is at a minimum, and the

government's burden of justification is at its highest." L. Tribe, *American Constitutional Law* 684 (1978). For example, public fora cannot be put off limits to first amendment activity solely to spare public expense. *See Schneider v. State,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939). Moreover, laws regulating public fora cannot be held constitutional simply because they leave potential speakers alternative fora for communicating their views. *See Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 556, 95 S.Ct. 1239, 1245, 43 L.Ed.2d 448 (1974); *Schneider v. State,* 308 U.S. 147, 163, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939).[8] Public fora have achieved a special status in our law; the government must bear an extraordinarily heavy burden to regulate speech in such locales.

It is also indisputable that the Richmond parade ordinance substantially inhibits speech. First, all advance notice requirements tend to inhibit speech. The simple knowledge that one must inform the government of his desire to speak and must fill out appropriate forms and comply with applicable regulations discourages citizens from speaking freely. *See Rosen,* 641 F.2d at 1249. Second, the delay inherent in advance notice requirements inhibits speech. By requiring advance notice, the government outlaws spontaneous expression. Immediate speech can no longer respond to immediate issues. The quantity of effective speech is limited. For these reasons, we have struck down an ordinance that required one business day's advance

---

**8.** The City of Richmond cites *Heffron v. Int'l Society for Krishna Consciousness,* 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981), which upheld a regulation prohibiting all sales or distribution of merchandise at a state fair except from fixed booths, for the proposition that the availability of adequate alternative fora may justify restrictions on speech in a public forum. Such a reading suggests that *Heffron* overruled *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1974), and *Schneider v. State,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939), and rewrote hornbook first amendment law. *See* L. Tribe, *supra,* at 689. That, of course, is not the case. Actually, *Heffron* merely pointed out that the unavailability of alternative fora would be a reason for

invalidating a restrictive ordinance, not that availability of alternative fora alone would justify the abridgement of free expression in appropriate places. *Heffron,* 452 U.S. at 654–55, 101 S.Ct. at 2567–68. The *Heffron* opinion also noted the distinction between public streets and the more limited public forum of a fairground. *Id.* at 651, 101 S.Ct. at 2565. This confirms the earlier pronouncement of the Court that "streets are natural and proper places for the dissemination of information and opinion; and one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Schneider v. State,* 308 U.S. at 163, 60 S.Ct. at 151; *accord Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. at 556, 95 S.Ct. at 1245.

notice by those who wished to distribute literature or otherwise communicate with the public at an airport. *Id.*

The harms of advance notice requirements are particularly pointed in parade registration schemes: "[T]iming is of the essence in politics .... [W]hen an event occurs, it is often necessary to have one's voice heard promptly, if it is to be considered at all." *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 163, 89 S.Ct. 935, 945, 22 L.Ed.2d 162 (1969) (Harlan, J., concurring). A delay "of even a day or two" may be intolerable when applied to " 'political' speech in which the element of timeliness may be important." *Carroll v. Commissioners of Princess Anne,* 393 U.S. 175, 182, 89 S.Ct. 347, 352, 21 L.Ed.2d 325 (1968). *See Wood v. Georgia,* 370 U.S. 375, 392, 82 S.Ct. 1364, 1374, 8 L.Ed.2d 569 (1962). Parades are public events. Participatory enthusiasm is vital to their success. The size of a crowd and its enthusiasm for a cause may generate sufficient passion to sway the undecided. Thus, simple delay may permanently vitiate the expressive content of a demonstration. A spontaneous parade expressing a viewpoint on a topical issue will almost inevitably attract more participants and more press attention, and generate more emotion, than the "same" parade 20 days later. The later parade can never be the same. Where spontaneity is part of the message, dissemination delayed is dissemination denied.

There is one other fundamental objection to the Richmond parade ordinance. The law does not discriminate against a particular viewpoint on its face, and there is no evidence of an improper legislative purpose in enacting the law. Within that framework of facial neutrality, however, we must examine restrictions on speech with particular care when their effects fall unevenly on different viewpoints and groups in society. *See* L. Tribe, *supra,* at 683. The Supreme Court has acknowledged the invidious effect of permitting facially neutral laws to discriminate against disfavored viewpoints and speakers. *See Martin v. Struthers,* 319 U.S. 141, 146, 63 S.Ct. 862, 864, 87 L.Ed. 1313 (1943). *See also Vin-*

*cent,* 104 S.Ct. at 2133 n. 30 (acknowledging "special solicitude" of the courts for forms of expression that may be stifled by content-neutral laws). Commentators have enthusiastically endorsed this analysis. *See, e.g.,* Kalven, *The Concept of the Public Forum: Cox v. Louisiana,* 1965 Sup.Ct. Rev. 1, 30. *Cf.* Stone, *Fora Americana: Speech in Public Places,* 1974 Sup.Ct.Rev. 233, 257. Common sense drives the point home: however neutral the government's intentions in enacting a law, the operation of that law may have a vastly uneven impact. There is no equality in a law prohibiting both rich and poor from sleeping under the bridges of Paris; there is no equality in a law prohibiting anonymous pamphleteering by both popular and unpopular groups, *see Talley v. California,* 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960); and there is no equality in a law prohibiting spontaneous parades on both topical and perennial issues. *Cf. Rosen,* 641 F.2d at 1249 (advance notice requirements discourage topical speech). That being so, the government must go a great distance to justify a parade registration scheme. Here, the government has not travelled that distance.

The government, in fact, makes almost no attempt to prove that a 20-day advance notice requirement is the least restrictive means of achieving its interest in regulating traffic. It simply asserts, without citation to authority, that 20 days notice constitutes a "fair balance" between Richmond's interest in safety and the paraders' interest in speaking. Both empirics and logic, however, are to the contrary.

Empirically, most cities are able to protect their interests in traffic control with advance notice periods of substantially less than 20 days. San Francisco requires only 24 hours advance notice of parades. *See* City and County of San Francisco, Municipal (Police) Code § 366. Boston has required three-day advance notice. *See Progressive Labor Party v. Lloyd,* 487 F.Supp. 1054, 1056 (D.Mass.1980). In 1970, Professor Blasi found that nine of the 22 municipalities responding to his inquiry, including

Dallas, Denver, and Oakland, had no advance notice requirements whatsoever. Blasi, *Prior Restraints on Demonstrations*, 68 Mich.L.Rev. 1482, 1526 n. 170 (1970). Only three of the municipalities had advance notice requirements of more than six days. *Id.* at 1524 n. 161. The mean advance notice period was New York City's 36-*hour* requirement.

There is also no basis in logic for cities to demand notice far in advance of parades. Policemen and newsmen are frequently deployed on less than two days notice. *Id.* at 1526. Data on competing uses of the streets can be researched fairly quickly. "[E]ffective warning to disinterested citizens will likely be at the same time and place twenty-four hours before the demonstration." *Id.* Richmond cannot legitimately argue that a 20-day advance notice requirement is the least restrictive means of protecting its interest in regulating traffic.

■ Finally, all available precedent suggests that a 20-day advance notice requirement is overbroad. The only advance notice requirements to be upheld by courts have been dramatically shorter than 20 days. *See A Quaker Action Group v. Morton*, 516 F.2d 717, 735 (D.C.Cir.1975) (upholding two-day notice requirement); *Powe v. Miles*, 407 F.2d 73, 84 (2d Cir.1968) (upholding two-day notice requirement). *See also Jackson v. Dobbs*, 329 F.Supp. 287 (N.D.Ga.1970), *aff'd*, 442 F.2d 928 (5th Cir. 1971) (upholding ordinance requiring marchers to obtain a permit by 4:00 p.m. on the day preceding a march); *York v. City of Danville*, 207 Va. 665, 152 S.E.2d 259 (1967) (striking down a 30- to 60-day advance notice requirement). Accordingly, we hold that the City of Richmond's requirement of 20 days advance notice to receive a parade permit violates the First Amendment.

## III. THE WAIVER PROVISION IS UNCONSTITUTIONAL.

■ The Richmond Municipal Code permits the City Council, at its "discretion," to waive the 20-day notice requirement "if it finds unusual circumstances." RMC § 11.-84.030. Unfettered discretion to license speech cannot be left to administrative bodies. *See Hague v. CIO*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). Such discretion grants officials the power to discriminate and raises the spectre of selective enforcement on the basis of the content of speech. *See Cox v. Louisiana*, 379 U.S. 536, 557–58, 85 S.Ct. 453, 465–66, 13 L.Ed.2d 471 (1965). The dangers of discretion are particularly evident in parade permit schemes, where waivers will often be sought for politically controversial causes. It is precisely when "political and social pressures" are most likely to affect decisionmaking that objective standards to govern discretion are most essential. Blasi, *supra*, 68 Mich.L.Rev. at 1484.

■ Both parties acknowledge that the language of the Richmond ordinance is constitutionally objectionable on its face, since it grants officials unfettered discretion to restrict speech. *See Hynes v. Mayor and Council of Borough of Oradell*, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); *Saia v. New York City*, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948). The government argues, however, that the waiver provision is susceptible to a narrowing construction that can save it "from constitutional infirmity." *United States v. Delaware & Hudson Co.*, 213 U.S. 366, 407, 29 S.Ct. 527, 535, 53 L.Ed. 836 (1909). This argument is unpersuasive.

Not all statutes are susceptible to saving constructions. Although courts have been hesitant to articulate a general standard, the rule seems to be that laws will be saved if they can be "readily reconstructed to avoid privileged activity." Note, *The First Amendment Overbreadth Doctrine*, 83 Harv.L.Rev. 844, 918 (1970). The Richmond waiver provision fails this test.

The saving construction proposed by the government would read provisions which, on their face, govern *police* decisionmaking, into the guidelines for *City Council* decisionmaking. Thus, "unusual" circumstances would mean only those instances when another parade was scheduled for the same time and place as the requested pa-

rade, or when the requested parade would unduly burden vehicular traffic. We refuse to adopt this construction. First, this reading tortures the plain language of the Richmond ordinance. Second, although this construction would give content to the word "unusual," the grant of "discretion" remains unfettered. The Richmond waiver provision is substantially overbroad and not readily susceptible to saving construction. It is therefore unconstitutional.

## IV. IN EACH RESPECT, THE RICHMOND ORDINANCE IS UNCONSTITUTIONAL ON ITS FACE.

■ The City of Richmond inaccurately argued that the NAACP lacks standing to challenge the parade ordinance on its face. *See* Section I(A)(3), *supra.* That argument is properly addressed here, as we devise a remedy to protect the rights of potential marchers whose speech would otherwise be chilled.

We will strike down a statute on its face if the law is substantially overbroad. This requirement keeps us from "striking down a statute on its face simply because of the possibility that it might be applied in an unconstitutional manner." *Munson,* 104 S.Ct. at 2839. We will not facially invalidate a statute where a large part of the conduct which the statute regulates is legitimately proscribed. *Id.* Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Vincent,* 104 S.Ct. at 2126.

We find precisely that danger in the Richmond parade ordinance. "Here there is no core of easily identifiable and constitutionally proscribable conduct that the statute prohibits." *Munson,* 104 S.Ct. at 2852. First, we cannot identify, before the fact, a discrete category of parades whose message will never depend on their timing. Second, the waiver provision is uniformly unconstitutional because in all cases it raises the spectre of administrative censorship. The flaw in the Richmond ordinance "is not simply that it includes within its sweep some impermissible applications, but that in all its applications, it operates on a fundamentally mistaken premise." *Id.* It assumes that speech can permissibly be delayed at the discretion of governmental agencies because of the substantial government interest in regulating parades. Twenty days of delay, however, is too long and administrative discretion is impermissible. Thus, we strike down the Richmond parade ordinance on its face.[9]

## V. PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES.

■ Awards of attorneys' fees to "the prevailing party" in civil rights cases are authorized by 42 U.S.C. § 1988. Plaintiffs may be considered prevailing parties if they succeed "on any significant issue in [the] litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), *quoting Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978). The NAACP and ACLU have successfully challenged the Richmond parade ordinance. We therefore remand to the district court for a determination of a reasonable fee award, for attor-

---

**9.** The NAACP also argues that the Richmond parade ordinance is unconstitutional because it lacks the procedural safeguards required by *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). *See National Socialist Party of America v. Village of Skokie,* 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977); *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 559, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1974); *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 162, 89 S.Ct. 935, 944, 22 L.Ed.2d 162 (1969) (Harlan, J., concurring); Monaghan, *First Amendment "Due Process,"* 83 Harv.L.Rev. 518, 541 (1970); Blasi, *supra,* 68 Mich.L.Rev. at

1532–35; Wexler, *Dissent, the Streets and Permits: Chicago as Microcosm,* 2 Urb.L. 350 (1970); Note, *Constitutional Law—Free Expression and Parade Permit Ordinances,* 34 So.Car.L. Rev. 51, 55 (1982); Note, *Parade Ordinances and Prior Restraints,* 30 Ohio St.L.J. 856 (1969); Note, *Parades and Protest Demonstrations: Punctual Judicial Review of Prior Restraints on First Amendment Liberties,* 45 Ind.L.J. 114 (1969); *The Supreme Court, 1966 Term,* 81 Harv.L.Rev. 69, 145–46 (1967). Because we strike down the Richmond ordinance on substantive grounds, we need not resolve the procedural issue here.

neys' services at the trial level and upon appeal, under the twelve-factor test set out in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).

CONCLUSION

The NAACP and ACLU have standing to challenge the Richmond parade ordinance, and this case is not moot. The Richmond ordinance violates the first amendment in two fundamental ways: it improperly restricts speech, and it improperly grants unlimited discretion to a censor. We hold the ordinance unconstitutional on its face, and remand for a determination of attorneys' fees.

REVERSED and REMANDED.